**AEBY et ux. v. UNITED STATES.**

No. 14282.

United States Court of Appeals
Fifth Circuit.

June 30, 1953.

Rehearing Denied Aug. 26, 1953.

James H. Martin, Joe H. Jones, Dallas, Tex., for appellants.

Lester L. May, Asst. U. S. Atty., Dallas, Tex., Frank B. Potter, U. S. Atty., Fort Worth, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

Appellants, Aubrey Aeby and Norene Aeby, are husband and wife and prosecute this appeal from their conviction of the offenses of, (1) knowingly receiving and concealing 191 grains of heroin which had been illegally imported into the United States, the defendants well knowing of such unlawful importation,[1] and, (2) knowingly purchasing 191 grains of heroin not in or from the original stamped package and which did not have affixed appropriate tax-paid stamps as required by the Harrison Narcotic Act.[2] Upon information filed that each of the defendants were second or subsequent offenders, Aubrey Aeby, the husband, was sentenced to imprisonment for a period of 20 years, and Norene Aeby, the wife, was sentenced to imprisonment for 10 years.

By errors specified and here insisted upon, the appellants bring into review the sufficiency of the indictment, the sufficiency of the evidence to support the convictions, the adequacy of the instructions of the court to the jury, allegedly prejudicial statements and questions of the United States Attorney during the progress of the trial, and failure of the court to declare a mistrial because of prejudicial statements of a government witness when testifying, as well as objections to the admission of evidence by a witness who, it is claimed, was not properly qualified as an expert.

We find the indictment sufficient to withstand the attacks against it. The first count is attacked because it does not charge that there was a fraudulent "receiving and concealing" of the illegal heroin. This count does charge that the defendants did "knowingly" receive and conceal the heroin, knowing the same to have been unlawfully imported. The statute (21 U.S.C.A. § 174) seeks to punish one who fraudulently or knowingly imports the nar-

1. Section 174, Title 21 U.S.C.A.

2. Section 2553(a), Title 26 U.S.C.A.

cotic drug or receives and conceals it after being imported with knowledge of its illegal importation. The first count of the indictment which charges the offense of knowingly receiving the heroin with knowledge of its unlawful importation plainly states an offense under the statute. The second count charges the defendants did unlawfully "purchase and have in their possession" 191 grains of heroin not in or from the original stamped package and which did not have affixed appropriate tax-paid stamps. Seizing upon the words "and have in their possession", appellants argue that the offense sought to be charged by it is not in fact the offense prohibited by the statute. It is true that the possession of the prohibited drug is what raises the *prima facie* evidence "of a violation of this subsection [2553(a)] by the person in whose possession same may be found." However, the offense is the purchasing of the prohibited drug "except in the original stamped package or from the original stamped package." This essential of the offense is contained in the charge and the allegation as to possession, while irregular, does not render this count of the indictment defective. Nor are we shown how its inclusion could have prejudiced the defendants, especially since the separate offense of possession set forth in Section 3224 of Title 26 U.S.C.A. relates to possession of drugs by persons who have not registered or paid the special tax and clearly it is not this offense which can in anywise be said to be included within the indictment so as to bring about the inconsistency and contradiction urged by the defendants.

■ We find in the evidence in the record sufficient basis in facts and circumstances to support the verdicts of guilty returned by the jury. Neither defendant exercised the privilege of becoming a witness. The evidence for the government, thus uncontradicted, presented a case where, after the residence of defendants had been under observation for some thirty days, on the early morning of the date of arrest, after the defendant husband had been seen to leave the home at about 4:30 in the morning to go to work, a detective observer and two others, all members of the Dallas, Tex-

as detective force, acting with a search warrant, entered the home of the defendants and found the wife, Norene Aeby, asleep in bed. No person approached the house between the time the husband left and the time of the officers' entry into the house. So the jury could find that the articles and conditions discovered in the house existed at the time of the husband's departure and were known by him. Upon awakening and arresting Norene Aeby, it was found that there was pinned to her gown a rubber finger stall containing 191 grains of substance testified to be heroin. Throughout the house the officers found gelatin capsules, cellophane bags, rubber finger stalls, hypodermic needles, rubber gloves with some of the fingers removed, delicate scales, and spoons. The scales, spoons, finger stalls and hypodermic needles had traces of heroin on them. Some of these articles were on tables in the kitchen, visible in the bathroom, and the scales were in the kitchen cabinet. So far as appears the husband and wife were the only occupants of the house. We think it clear from the evidence that the situation was such that the number and location of the paraphernalia and articles and the unusual nature of the articles, as well as the evidence of rubber gloves with fingers severed, was such as to justify a conclusion that more was involved than an unfortunate case of a wife who was an addict which the husband might tolerate, and to justify a conclusion by the jury, if they were so convinced, that the husband of the household participated in the receipt and concealment of the large quantity of heroin found in the actual possession of the wife in the home, as well as in its purchase not from the original package. In other words, that such heroin was also in his possession, and thus raise *prima facie* evidence of violation of the statute charged.

■ Our statement that the jury was authorized to find that the substance in the finger stall on the person of Norene Aeby and traces of which were found on the other articles referred to was heroin evidences our rejection of the contention of the defendants, urged after conviction, that there was no legal proof that the substance was heroin because of the failure of the evi-

dence to show that the government chemist who testified that it was heroin was qualified as an expert. When this witness was shown to be a chemist employed by the Alcohol Tax Division in New Orleans, and he proceeded to identify the government's exhibits and as to making a test of them when they were received "by registered mail at our laboratory in New Orleans", and that the substance in the finger stall contained approximately 191 grains of heroin, defense counsel stated only, "We object to that." Upon later objection, the Court inquired, "What is the objection," to which counsel replied, "It is irrelevant and immaterial, and we have objected to the introduction of the exhibits, heretofore, and we do not want to waive any matter in the record." At the conclusion of this witness' testimony, counsel again stated, "We object to the testimony," and asked the court to instruct the jury not to consider it for any purpose. The objections urged entirely fail to present the point now urged and the court was in nowise informed of defendants' present contention that the qualification of the witness to testify as an expert had not been shown. The objections of irrelevancy and immateriality were plainly not good. If the qualifications of the witness had been challenged, opportunity would have been presented to develop the matter further. The question not having been raised upon the trial, it can not now avail the defendants. Furthermore, in the absence of any question being raised at the trial, we think that at least *prima facie* a chemist employed by the Alcohol Tax Division who was designated to test and analyze government exhibits would qualify as an expert.

▅▅▅ In view of the nature and elements of the offenses and the manner in which these were charged in the indictment, we perceive no necessity for the court stating to the jury the terms of the statute under which the prosecution was proceeding. Indeed, in a case like the present the substantial question is whether the defendant is shown to have, or have had, possession of the narcotic drug, for such possession is deemed sufficient evidence to authorize conviction, unless the defendant explains the possession to the satisfaction of the jury,[3] or, as stated in Section 2553(a), supra, "the absence of appropriate tax-paid stamps from any of the aforesaid drugs shall be *prima facie* evidence of a violation of this subsection by the person in whose possession same may be found". The Court charged the jury upon the question of possession and also instructed the jury that even if there was possession in one's house, if "you knew nothing of it, you would not be criminally responsible for it," and charged that if the jury found "that the defendant Aubrey Aeby had no knowledge of the presence of these drugs there in his wife's possession and in his house, then it would be your privilege and your duty to acquit him." We find no error in the Court's charge on the law of a principal in an offense and in connection therewith on aiding and abetting. In the latter connection, the Court instructed the jury that to constitute an aider or abettor it was essential that such person "should share the criminal intent with the principal, or the party who actually commits the offense" and further, "So, if you find and believe that one of the defendants, the defendant Norene Aeby, is guilty as charged in the indictment, and you further find that the defendant Aubrey Aeby had actual knowledge of her conduct and that he aided and abetted her in carrying on such work, then he would also be guilty under the law. If he had no knowledge of her conduct and her acts, he would not be guilty, and should be acquitted." We think the charge of the Court sufficiently presented to the jury the principle that the jury must believe that the actual possessor of the heroin was guilty and that the defendant Aubrey Aeby must have had knowledge of, and participated with her in, the commission of the offenses charged before he should be convicted. In view of the general charge of the Court, the refusal of the defendants' requested charges 2, 4 and 5 on the subject of possession was not error. While the remaining requested instructions in some parts contained statements of pertinent law, these are commingled with unsound and incorrect

---

3. Section 174, Title 21 U.S.C.A. supra.

legal and factual propositions and the Court was not required to sift the good from the bad and present the good to the jury, especially where the general charge covered the real issues in the case.

We do not condone the query of the government's attorney in propounding the question to the defense witness as to his knowledge of Aubrey Aeby's reputation, nor to his interjecting the objection to testimony by another witness if the defendant was "not going into his reputation," nor the objection by government's counsel to testimony on behalf of the defendants which could be construed as a comment upon the defendant Norene Aeby's failure to take the stand as a witness. However, no testimony in response to the question or statements was given and the court sustained the objection to the question and cautioned the jury to disregard the suggestions and objection of the district attorney. Under the circumstances here, we do not think there was any sufficient cause to grant the defendants' motion for a mistrial. The same is true as to the overruling of a motion for mistrial based upon the prejudicial statement of the government's witness that he knew the defendant "had let women take the rap for him before." The Court told the jury that this statement should be disregarded and expunged from the record. The trial judge, of a necessity, must have a discretion in dealing with such matters which will probably arise during the progress of a trial. We do not find in this case that the failure to declare a mistrial constituted an abuse of discretion, though we, ourselves, might have adopted more stern measures of rebuke.

We have carefully considered defendants' other assignments of error and these present no cause for reversal.

Judgment affirmed.

HUTCHESON, Chief Judge (concurring in part and dissenting in part).

I concur in the opinion and in the judgment of affirmance as to appellant Norene Aeby. I dissent from it as to appellant Aubrey Aeby.

As I read the record, all of the direct, and every tendency of the circumstantial, evidence points conclusively to Norene's guilt. Not a syllable of the direct, and not a single shred of the circumstantial, evidence points to Aubrey's.

Where, as here, a conviction calls for an automatic twenty year sentence, courts should at least be certain that the conviction rests on evidence and not on mere conjecture. Believing that the judgment should be reversed as to appellant Aubrey Aeby for want of evidence to sustain the conviction, I respectfully dissent from its affirmance as to him.

Rehearing denied; HUTCHESON, Chief Judge, concurs in part and dissents in part.