**RENT et al. v. UNITED STATES.**
No. 14531.

United States Court of Appeals,
Fifth Circuit.
Jan. 6, 1954.
Rehearing Denied Feb. 12, 1954.

Russell, Circuit Judge, dissented.

Before HOLMES, RUSSELL and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Appellants Rent and Curry, along with one Dragotta not tried, were indicted for violations of the narcotics laws, Section 2557(b) (1) and Section 2593(a), Title 26 United States Code.[1] The first count charges that all three defendants "did unlawfully, knowingly and feloniously combine, conspire, confederate and agree together and one with the other and with other persons * * * to acquire, obtain and receive marihuana without having paid the transfer tax imposed by Section 2590, Title 26, United States Code." The overt acts charged are: one, that the defendants proceeded to the Tandem Lounge in Houston, Texas; two, that the defendant Rent had seven ounces of marihuana in his possession; three, that the defendant Curry had one marihuana cigarette in his possession; and four, that the defendant Dragotta had 119 grains of marihuana in his possession.

Rent is charged by the second count with being a transferee required to pay the transfer tax imposed by Section 2590, and that he unlawfully, knowingly and feloniously obtained and received seven ounces of bulk marihuana without having paid said tax and without a written order issued for that purpose by the Secretary of the Treasury. Curry is similarly charged in the third count with the unlawful possession of one marihuana cigarette containing three grains more or less. The fourth count charges Dragotta, who was not tried, with the possession of 119 grains of marihuana.

M. Gabriel Nahas, Jr., James Royall, Houston, Tex., for appellants.

Brian S. Odem, U. S. Atty., William R. Eckhardt, Asst. U. S. Atty., Houston, Tex., for appellee.

The questions to be decided on this appeal relate to the sufficiency of the evidence and especially to the validity of

1. "§ 2593. *Unlawful possession*
"(a) *Persons in general.* It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 2590(a) to acquire or otherwise obtain any marihuana without having paid such tax; and proof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand by the collector, to produce the order form required by section 2591 to be retained by him, shall be presumptive evidence of guilt under this section and of liability for the tax imposed by section 2590(a)." Section 2557(b) (1) covers, among other things, a person who "conspires to commit an offense described in this subchapter * * *."

the search by which the seven ounces of marihuana were discovered. A decision of those questions requires a detailed consideration of the evidence.

On the night of August 6, 1952, Mr. Griffin, an officer of the Federal Bureau of Narcotics, received a telephone call from a man who resided in the vicinity of West Saulnier and Taft Streets in Houston, Texas, to the effect that he had seen somebody place a "stash" by the side of a warehouse on the south side of Saulnier. In response Officer Griffin, together with Houston's City Police Detective Brannon, went to the address from which the information had come and did find a marihuana cigarette somewhere near the warehouse. That cigarette was not shown to be further connected with the offenses here involved.

Griffin and Brannon then sat in their car and further observed the vicinity. At about 9:30 p. m. the defendants Rent and Curry, along with Dragotta, walked to the corner of Saulnier and Taft Streets. Curry and Dragotta waited on the corner and Rent went to the right side of an automobile parked directly across the street from the car in which the officers were waiting. The officers testified that a street light on the corner furnished sufficient light for them to observe the occurrences. Rent opened the right hand door of the automobile, bent over inside, and then straightened up and lit a cigarette, sitting on the edge of the automobile seat with the right front door open while he smoked the cigarette. Griffin testified that, from his experience as a narcotics agent, he knew that there was a distinctive way in which marihuana cigarettes are ordinarily smoked, "it burns with such combustibility that you have to take real long draws, and it doesn't take any time at all to burn down a marihuana cigarette when it is smoked." Griffin was of the opinion from the manner in which Rent smoked this cigarette that it was a marihuana cigarette, "from the way the cigarette was coaling up, the draft of his breath and all, it was long draws taken on the cigarette." He then observed "the arc

of the flame dropped by the side of the car." Rent then got out of the automobile, rejoined Curry and Dragotta, and they walked south on Taft Street.

Officers Griffin and Brannon then took position in the doorway of an apartment at 302 West Saulnier Street which was about twenty feet from the automobile in the door of which Rent had smoked the cigarette. Nothing further happened for about an hour and a half. Officer Brannon testified that he had information that someone had placed an object in the grass by the side of this automobile, and about 11 p. m. he walked out to the automobile and searched the grass strip between the sidewalk and the curb along side of it and found a large hand rolled unsmoked marihuana cigarette. He brought that cigarette to Officer Griffin, who wrote his name, the date and the time on it, and Brannon then replaced the cigarette where it had been found near the right front door of the automobile.

At about 11:50 p. m. the defendants Rent and Curry, along with Dragotta and a fourth man, Miller, came up to the automobile. Rent opened the door on the driver's side and got in, the other three stood beside the side of the automobile. "Curry looked around over his shoulder, and reached down and picked up this cigarette." The officers then came out of the doorway, shouting "Don't move." Curry was observed to "make a throwing motion over the top of the car with his right hand." Officer Brannon testified that he saw something leave Curry's hand and go into the street. The officers told Rent not to start the car.

Brannon made a brief search in the street and discovered the marihuana cigarette, which had been marked by Griffin, a short distance from the car toward the center of the street. Griffin made a further search and shortly ahead of the right front wheel of the automobile he found a marihuana cigarette butt. This was approximately in the vicinity where Rent earlier had been seen to throw the lighted cigarette, though neither of the officers undertook to say or to express an

opinion that the marihuana cigarette butt was the same as the lighted cigarette thrown by Rent The defendants were then placed under arrest and were taken to jail by Officer Brannon and by another narcotic officer, Engleking.

Officer Griffin did not then "seize" the automobile for transporting contraband, 49 U.S.C.A. §§ 781, 782, 787(d), but he did take the car into custody with the intention of searching it. He parked it across the street from the nearby Tandem Lounge where it remained under his observation until about 1 a. m. During this time the officers continued their investigation of narcotics violations in this area and arrested three other persons not here involved. The automobile was then driven to the Houston Police Department parking lot and locked. The routine processing of the seven defendants arrested that night was not concluded until about 4 a. m. The officers then went home "to get some sleep." An actual search of the car was not made until about 10:30 the next morning. At that time, Officer Griffin found a package containing bulk marihuana concealed above the glove compartment of the car and a few minutes later Officer Engleking found a second package of marihuana above the glove compartment near where the first package had been found.

When Rent and Curry were arrested, Officer Griffin took a large piece of white paper and their "pockets were turned out and massaged until all extraneous matter was on this paper." The dustings from the pockets of Rent and Curry were kept separate and were analyzed by the Government chemist, as were the contents of the cigarette, the cigarette butt, and the two packages containing bulk marihuana. All were found to contain marihuana. The chemist testified as to the dustings from Rent's pockets, "there were a few particles of marihuana in this material." As to the dustings from Curry's pockets, he testified, "I found just one small piece of marihuana in that package."

■ Prior to the trial, Rent filed a motion to suppress the evidence relating to the seven ounces of bulk marihuana found upon the search of his automobile. The District Court heard evidence in connection with this motion in advance of the trial and overruled the motion. In passing upon the validity of the search, we have considered both the evidence upon that motion and the evidence on the trial, as seems to be required by the decision in Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543.

■ The evidence under count one of the indictment, in which the defendants were jointly charged with conspiracy to unlawfully obtain and otherwise receive marihuana, was clearly insufficient. There was no testimony that the defendants actually entered the Tandem Lounge, one of the overt acts charged in the indictment, though the relation of that act to the possession of marihuana was never made to appear from the evidence. The only evidence going to prove conspiracy was the evidence tending to show Rent's possession of the seven ounces of marihuana and Curry's possession of the one marihuana cigarette, and the fact that they were walking in the company of each other. None of the officers had known either Rent or Curry previously, and there was no testimony tending to show that either of them was a dealer in marihuana or had any previous connection with marihuana, except the evidence of the chemist as to the minute particles found in the dustings from their pockets.

■ While the conspiracy here charged is that denounced by 26 U.S.C. § 2557(b) (1) and the conspiracy considered in the cases presently to be cited was that defined in the general criminal conspiracy act, 18 U.S.C. § 371, we see no reason for any difference in the applicable rules. The gist of the offense of conspiracy "is agreement among the conspirators to commit an offense attended by an act of one or more of the conspirators to effect the object of the conspiracy." United States v. Falcone, 311 U.S. 205, 210, 61 S.Ct. 204, 207, 85 L.Ed. 128. "To support the charge of conspiracy, the intent to conspire must be shown." Mackreth v. United States, 5 Cir., 103 F.

2d 495, 496. No connection was proved between Rent's alleged possession of seven ounces of marihuana and Curry's possession of one marihuana cigarette. There was no evidence to establish the overt act charged as to the possession by Dragotta of 119 grains of marihuana. The mere walking together of Rent and Curry is not sufficient. "Presumptions of guilt are not lightly to be indulged from mere meetings." United States v. Di Re, 332 U.S. 581, 593, 68 S.Ct. 222, 228, 92 L.Ed. 210. The defendants' motion for directed verdict under count one should, therefore, have been sustained. However, the sentence imposed by the court on each of the defendants was a general sentence imposed concurrently on the conspiracy count and the substantive count with which such defendant was charged, and the judgment and convictions would be due to be affirmed if there were no other error and if the evidence were sufficient to support convictions on the substantive counts. Pollock v. United States, 5 Cir., 202 F.2d 281, and cases cited in Footnote 1 thereto.

 The sufficiency of the evidence to sustain the conviction of the defendant Rent under the second count depends upon the validity of the search by which the seven ounces of bulk marihuana were discovered. The main effort to justify the search of the automobile was as incidental to the arrest of this defendant. We find statutes authorizing the United States Marshals, Agents of the Federal Bureau of Investigation, and certain other federal officers, to make arrests without warrant in certain cases. 18 U.S.C. §§ 3050 to 3054, inclusive. We do not find any such authority vested in an officer of the Bureau of Narcotics, 5 U.S.C.A. § 282a(a) and (b). The Texas state statute, therefore, provides the standard by which the legality of these arrests must be measured. United States v. Di Re, supra, 332 U.S. at page 591, 68 S.Ct. 222; Johnson v. United States, 333 U.S. 10, 15, note 5, 68 S.Ct. 367, 92 L.Ed. 436. The Texas statutes permit any peace officer to arrest an offender for felony committed in his presence or within his view, or when he has probable cause to believe that a felony has been committed and there is no time to procure a warrant of arrest. Articles 212 and 215 of the Code of Criminal Procedure of the State of Texas. We hold that the arrests of both defendants were legal.

 The right to search incident to an arrest is, of course, a limited right. As expressed in several of the cases, it is limited to a search "contemporaneously" conducted. Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145; Marron v. United States, 275 U.S. 192, 199, 48 S.Ct. 74, 72 L.Ed. 231; United States v. Rabinowitz, 339 U.S. 56, 61, 70 S.Ct. 430, 94 L.Ed. 653; Drayton v. United States, 5 Cir., 205 F.2d 35, 37; cf. Weeks v. United States, 232 U.S. 383, 386, 393, 34 S.Ct. 341, 58 L Ed. 652. The Government has cited us to no case bearing much analogy to the case before the Court.

It calls attention to the expression of this Court in Cannon v. United States, 5 Cir., 158 F.2d 952, 954, "that in a search of automobiles a warrant is rarely, if ever, required." As authority for that statement, this Court cited the case of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, and in that case the Supreme Court recognized,

"a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." Carroll v. United States, supra, 267 U.S. at page 153, 45 S.Ct. at page 285.

The reason for that difference does not exist in this case. The automobile was at rest, was actually in the custody of the officers, locked, and not likely to be disturbed.

898

In support of the validity of the search, the Government cites also Lowery v. United States, 9 Cir., 156 F.2d 153, and Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151. In the Lowery case, the defendant was searched upon being taken to the office of the narcotics officers for questioning. In the Scher case, it was held that passage of an automobile into an open garage, closely followed by the observing officer, did not destroy the officer's right to search. Neither of those cases would sustain the validity, as an incident to the arrest, of the search made in this case more than ten hours after the arrest.

It may be, however, that in this case, as in the case of Carroll v. United States, supra, 267 U.S. at pages 158, 159, 45 S. Ct. at page 287, "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." It will be noted that the narcotics officers did not consider that they had sufficient evidence to seize the automobile as having been used to transport contraband articles until they found the seven ounces of marihuana in the automobile. Asked to state whether or not the automobile was parked at the curb at the time he seized it, Officer Griffin answered, "It is all according to how you phrase the word 'seize', Counsel. We took the car into custody that same night when we arrested Rent, and it was taken down to the police station." He further testified that he made the seizure, "when I found what was purportedly marihuana in it."

It will further be noted that Rent was not prosecuted for the possession of the cigarette which he smoked while partly within the automobile, and which in the officer's opinion was a marihuana cigarette. It was recognized that the evidence of that offense was no more than suspicion or perhaps probable cause to make the arrest. That probable cause, coupled with other existing circumstances, may very well have authorized

the officer to take the automobile into custody, but we do not think that it justified him in searching the automobile a number of hours after the arrest and without a search warrant for which an application could then easily have been made. The suspicion in this case was no stronger than the suspicion aroused by presence of odors of burning opium in the case of Johnson v. United States, 333 U.S. 10, 13–15, 68 S.Ct. 367, 369, where Mr. Justice Jackson, speaking for the Court, said:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.

"There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may

be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to by-pass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction, except perhaps the fumes which we suppose in time would disappear. But they were not capable at any time of being reduced to possession for presentation to court. The evidence of their existence before the search was adequate and the testimony of the officers to that effect would not perish from the delay of getting a warrant.

"If the officers in this case were excused from the constitutional duty of presenting their evidence to a magistrate, it is difficult to think of a case in which it should be required."

See also Taylor v. United States, 286 U.S. 1, 5, 52 S.Ct. 466, 76 L.Ed. 951.

The Government apparently takes the position that, since the decision in United States v. Rabinowitz, supra, the practicability of procuring a search warrant is not to be considered in deciding whether the search without a warrant was reasonable. We do not understand that the decision in that case went so far. It was there said:

"To the extent that Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, requires a search warrant *solely* upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled." (Emphasis

supplied.) United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 435.

The Court did not overrule the other cases referred to in the vigorous dissent of Mr. Justice Frankfurter and did not criticize the able opinion of Chief Justice Taft in Carroll v. United States, supra. Rather, the Court said that whether the search was reasonable "depends upon the facts and circumstances—the total atmosphere of the case."

 We think that one of the facts and circumstances to be considered in this case is the fact that there was no reason for not submitting to a magistrate the evidence which the officer deemed sufficient to justify a search of the automobile. The need for effective law enforcement is not satisfied as against the right of privacy by any necessity for the officer to take the decision into his own hands. The officer had ample opportunity to apply for a search warrant and in our opinion a search of the automobile without a warrant was not justified. Johnson v. United States, supra. With the exclusion of the evidence of possession of the seven ounces of marihuana found upon this illegal search, the conviction of Rent under the second count of the indictment cannot stand.

 It remains to consider the sufficiency of the evidence to sustain the conviction against Curry based upon the possession of one marihuana cigarette, with supporting testimony that the dustings "massaged" from his pockets were found to contain "just one small piece of marihuana." To sustain the conviction of Curry, the inferences reasonably to be drawn from the evidence must not only be consistent with his guilt but inconsistent with every reasonable hypothesis of his innocence. Kassin v. United States, 5 Cir., 87 F.2d 183, 184. For Curry's possession of the marihuana cigarette to constitute him a transferee of the marihuana required to pay the transfer tax, the possession must have been with guilty knowledge or intent. That is recognized in the indictment

which charges Curry's conduct to have been "unlawfully, knowingly and feloniously" committed. The "one small piece of marihuana" found in the dustings of Curry's pocket might well have dropped from a match box borrowed from an associate or have otherwise accidentally found its way into his pocket. Curry's possession of the one cigarette was a mere fleeting possession, not inconsistent with honest intention or mere curiosity, and his throwing the cigarette away upon being ordered to stop is not, in our opinion, substantial evidence of a guilty knowledge or intent. Criminal intent is a *sine qua non* of criminal responsibility. Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288. There was no substantial evidence against Curry of criminal intent. The evidence was consistent with his innocence. It is too much for a man to be imprisoned for two years for merely picking up and throwing away a cigarette.

The judgment of conviction as to each defendant is, therefore, reversed and judgment here rendered discharging the defendants.

Reversed and rendered.

RUSSELL, Circuit Judge, dissenting.

RUSSELL, Circuit Judge (dissenting).

I respectfully dissent. Following Rent's arrest, which we all agree was a legal one, the automobile was on the street without its owner or any caretaker. It was only proper that the officers take possession of it. Such possession was therefore entirely legal whether or not it be considered the consequence of the seizure of a car. Vagueness as to the time of actual seizure of the car is immaterial. The statute requires no precise ritual of seizure. Under all of the circumstances of this case, the delay in making search for the fruits and evidence of the crime for which Rent had been arrested, did not, in my opinion, require the trial court to find that the search was unreasonable as a matter of

law. As to whether Curry "possessed" the marihuana cigarette which he picked up from the ground, I think the question was properly submitted to the jury for determination and, possession being adjudged, there arose the statutory presumption of guilt, which was in no way controverted. 26 U.S.C.A. § 2593(a). Compare Aeby v. United States, 5 Cir., 206 F.2d 296; Henderson v. United States, 5 Cir., 206 F.2d 300.

#### On Petition for Rehearing.

PER CURIAM.

In our original opinion we stated:

"We find statutes authorizing the United States Marshals, Agents of the Federal Bureau of Investigation, and certain other federal officers, to make arrests without warrant in certain cases 18 U.S.C. §§ 3050 to 3054, inclusive. We do not find any such authority vested in an officer of the Bureau of Narcotics, 5 U.S.C.A. § 282 a(a) and (b). The Texas state statute, therefore, provides the standard by which the legality of these arrests must be measured. United States v. Di Re, supra, 338 U.S. at page 591, 68 S.Ct. 222; Johnson v. United States, 333 U.S. 10, 15, note 5, 68 S.Ct. 367, 92 L.Ed. 436. The Texas statutes permit any peace officer to arrest an offender for felony committed in his presence or within his view, or when he has probable cause to believe that a felony has been committed and there is no time to procure a warrant of arrest. Articles 212 and 215 of the Code of Criminal Procedure of the State of Texas. We hold that the arrests of both defendants were legal."

Appellee properly points out that in the recent opinion of the Seventh Circuit in United States v. Jones, 204 F.2d 745, that Court examined thoroughly into the derivation of authority of the Bureau of Narcotics, and concluded: "The authority conferred by the various statutes evinces, we think, a

clear intent to include the arrest of offenders." 204 F.2d 745, at page 754.

We do not find it necessary to reconcile a conflict possibly apparent between that case and our opinion. There is no real conflict; the question is academic inasmuch as we held that in any event the arrests of both defendants were legal.

Upon careful consideration of this and the other grounds of the petition, neither of the judges who concurred in the original decision thinks that a rehearing should be granted, and the same is therefore

Denied.