**COCHRAN et al.**

v.

**UNITED STATES.**

No. 14723.

United States Court of Appeals Fifth Circuit.

April 22, 1954.

512

Frank F. Mize, Osborn G. Idom, Forest, Miss., for appellants.

Joseph E. Brown, U. S. Atty., and Robert E. Hauberg, Asst. U. S. Atty., Jackson, Miss., for appellee.

Before BORAH and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Appellants were charged and convicted, along with five others, in the court below of the offense of conspiring to violate Sections 2553(a) and 2554(a) of Title 26, United States Code by possessing and dealing in narcotics. Some, in addition to conspiracy, were charged with substantive offenses. The two appellants, John Morgan Cochran and Claude Collins, together with Percy Leroy Ratcliff, were each convicted of conspiracy alone, and filed notices of separate appeals. Cochran and Collins perfected theirs but Ratcliff sought to proceed in forma pauperis, which was denied, and did nothing further about it. The jury could not agree and a mistrial was entered on the conspiracy count as to Jack B. Johnson, the only one charged against him. They were also unable to agree on the charge of conspiracy against Eloise McDonald, but convicted her on a substantive charge. The penalty imposed on all who were convicted was a fine of one dollar and three years imprisonment. Only the three named in the title to this case appealed.

No brief has been filed for Ratcliff.

Appellants raise only two points: (1) the court erred in refusing to suppress evidence obtained on a search warrant from the person of Cochran; and (2) in overruling motions for judgment of acquittal in regard to all appellants.

All of the persons charged were addicts. Baird E. Mannley was an habitue of a place called Club 80, operated by Ratcliff, and lived in an apartment at Magnolia Tourist Court which was under the management of Cochran. Collins was helping in the Burwell Springs Cafe operated by one Dennis.

The case was based principally on the testimony of Cody Rambo, an addict informer going at the time under the name of Clay Ezell, and of Bowman G. Taylor, a government narcotics agent. Counsel for appellants state in brief that their

clients, along with Mannley and most, if not all, of the others had been addicts of long standing.

On Saturday evening, June 21, 1952, Taylor, the government narcotics agent, with Rambo, undertook an investigation of the handling of narcotics in the vicinity of Meridian, Mississippi. They stopped first at Burwell Springs Cafe on old Highway 80, where Collins worked. Rambo inquired of Collins if he knew where some "stuff" could be had. Collins asked if he was an addict and Rambo stated he was. Taylor and Rambo stayed at this cafe only about 30 minutes and left, stating they would be back next day. They returned Sunday morning and spent most of the day talking with Collins, and Cochran, operator of the Magnolia Tourist Court, came in while they were there. They engaged Dennis, operator of this cafe, and Collins in conversation.

On Monday following, they went back to Burwell Springs Cafe and asked if Bob Mannley (Baird E. Mannley) had been out there. Collins stated he had not, but had gone to Club 80. Taylor and Rambo went to the latter place and Rambo asked Ratcliff, the operator of this club, where Mannley was and was immediately taken into a room occupied by Mannley and a woman and caught Mannley in the act of taking a shot of dope. Rambo told Mannley he wanted to see him and the latter asked, "What for?" to which the former replied, "about getting some stuff". Mannley said, "I don't know you" and Rambo said Collins had sent him. Rambo testified that Mannley then came out of the room. (Page 32 of the Record.)

At the trial Rambo was questioned at length as to how he came to be looking for Mannley, and in substance said that Collins had informed him that Mannley could get the narcotics, adding "Bob is the best connection; he takes good care of all of them at Club 80". On objection the court then instructed the jury as to the law of conspiracy and the effect of statements of conspirators, if proven while the conspiracy lasted. The witness Rambo stated further that Collins told him "to see Bob at Magnolia Tourist Court". At that time the witness knew Mannley as "Bob Manning". After this conversation, Collins left and was gone about an hour when he returned and reported Mannley was not at the tourist court. Collins finally told him if he (Rambo) did not succeed in getting narcotics, he "would get him some tomorrow". This was Sunday night and Taylor and Rambo stayed at Burwell Springs Cafe until 9:30 or 10 o'clock.

The next day, Monday, about ten o'clock, A.M., they went to Magnolia Tourist Court, saw appellant Cochran, and asked him "for Bob Mannley". As stated earlier, Cochran operated this court. In answer to a question as to whether he discussed narcotics with Cochran, the witness replied, "Yes, sir."[1]

The witness had evidently confused the Sunday evening happenings with what he was then talking about, because just before, he had been talking about what happened when he went back "Monday morning about ten o'clock". Then, returning to Monday morning he again said he talked to Cochran about ten o'clock after he had seen the latter with Collins the day before. As to this

---

1. Cody Rambo testified (P. 40, Vol. I, Record):

"A. He started away from the Springs Cafe and Mr. Collins asked him if Bob had any stuff and he said, 'I guess so; he always does have', something to that effect. He said, 'This boy wants to see him and make arrangements to get some.'

"Q. You saw Collins about that too? A. Yes, sir.

"Q. Did you talk to both of them on that occasion? A. Yes, sir.

"Q. What was it Cochran said? A. He said, 'I guess so; he always does have.'

"Q. Did you or not see Mannley on that occasion? A. No, sir, I didn't.

"Q. Did either Collins or Cochran try to locate him for you? A. Well, that is when he came back and said he wasn't up there; that was Sunday evening."

second meeting with Cochran, he testified as indicated in footnote.[2]

Rambo later, on Monday, went to Club 80 on the recommendation of Collins, was taken into a room by Ratcliff, and purchased four tablets of "dilaudid" paying therefor $4.00, or one dollar apiece. According to Rambo "Bob informed him he was going to make a trip" Tuesday and "would have some morphine and dolophine". This took place at Club 80 and while it was going on Taylor was sitting at the bar and the witness gave to him the four tablets he had purchased. Thereafter he saw some of the defendants "mighty near every day" but did not see Bob until Friday. "I bought twenty dollars worth on Friday." This was at Burwell Springs Cafe. Johnson was at the cafe and when Rambo asked if Mannley was there, replied that he had "sent and got him to give George (Collins) a shot * * *". By that time Rambo had acquired such recognition that he just walked back to the door of the room where he found Mannley, Jack Johnson, Collins, and the latter's wife. At that time he bought "twenty dollars worth; eight half grain morphine tablets" paying therefor two ten dollar bills. He again gave the drugs to Taylor.

The next night (the second Saturday) he again contacted Mannley at Burwell Springs Cafe about 10:00 or 11:00 o'clock at which time he bought another sixty dollars worth of half grain morphine tablets. He paid for them with money furnished by Taylor and gave the latter the drugs.

This witness bought narcotics three times altogether, but never any at Magnolia Tourist Courts, operated by Cochran, whom he had seen two or three times "at the Cafe" presumably connected with the Courts. He never discussed the drugs with Cochran, simply asked him if "Bob was there". The only time narcotics was mentioned was the occasion above mentioned when Cochran and Collins were together and the question was asked whether Cochran knew if Mannley had any dope and he replied he supposed so "he usually does". Magnolia Tourist Court and Club 80 are about three miles apart.

██ It does appear that there was ample evidence to sustain the conviction of both Collins and Ratcliff on the conspiracy charge from which they appealed. There was also sufficient evidence to support the affidavit and search warrant as to them but the remaining question is whether there was enough evidence to justify the arrest and searching of Cochran. It is true that he was shown to be associating with these people, allowing Mannley to occupy one of the cottages in his tourist court, was an addict, and seemed to know what the score was insofar as the availability of narcotics was concerned.

On June 27th the agent, Taylor, made an affidavit that: "He is positive that on the premises known as Magnolia Tourist Court, Cabins 8, 9 and 10, * * there is now being concealed certain property, namely narcotic drugs which were unlawfully acquired * * * in violation of Section 2554-a, Title 26, U. S. Code. * * * that the facts tending to establish the foregoing * * * are as follows: That a special employee of the Bureau of Narcotics (Rambo) * * under his direction did purchase from subject * * * (no name given) without the prescribed order forms * * * a certain quantity of morphine, which

---

2. Rambo further testified (P. 41, Vol. I. Record):

"A. I stopped and talked to Mr. Cochran and asked if Bob was there and he said no, he had done left. I drove by the Springs Cafe and they said he had come by and had gone to 80 Club.

"Q. When you say 'they' you have to identify them; who did you see at the Spring Cafe, A. Jack Johnson.

"Q. Where did you see him? A. He worked at the Spring Cafe; he worked there part of the time.

"Q. Did you have any conversation with him? A. Yes, sir.

"Q. About narcotics? A. Yes, sir.

"Q. Tell us what you said and what he said? A. I asked him if Bob was there and he said he had done gone to 80 Club."

morphine said subject obtained from the premises at the Magonlia Tourist Court * * *".

The search warrant was directed to said Bowman G. Taylor and after stating it was based upon the "positive statement" in his affidavit "that on the premises known as Magnolia Tourist Court, Cabins 8, 9, and 10 * * *" he was authorized "to search forthwith the place named for the property specified * * *". The return on the search warrant showed that he "searched the premises described in the warrant" and found "33 ½ grain morphine tablets, one hypodermic syringe, and three needles." On cross examination Taylor testified he had searched Cochran.[3]

Both the affidavit and search warrant authorized the search only of cabins 8, 9 and 10 at the Magnolia Tourist Courts. After Taylor had found the narcotics and arrested Mannley, he then went to the office of the courts and arrested Cochran, on whose person he found the three twenty dollar bills that Rambo had paid Mannley for narcotics the night before. The only connection Cochran was shown to have had with the conspiracy as disclosed by the record, was the fact that he, too, was an addict; he operated the tourist court where Mannley, apparently the chief peddler, lived; and had been found by Taylor and Rambo at some of the places where the others were when the investigation was going on.

 As above indicated, both the affidavit and the search warrant described only the three cabins at the tourist court. There was no evidence that Cochran had illegally handled or sold any narcotics, the basis of the search being that the "subject", unnamed, had engaged in this traffic. We may take notice of the fact that tourist courts are composed of a series of cabins which are usually occupied by customers, some only for a single day or night and others for longer periods. Regardless of the length of time, the relationship of the occupants to the proprietor and his office, is no different from that of a hotel and the latter has no responsibility as to what may be found there in violation of the law, unless the evidence is sufficient to show that he has a guilty knowledge thereof and has participated therein in some way. No such proof was made in this case. The mere statement by Cochran that Mannley "usually" had narcotics, in the absence of more definite proof of participation, was not sufficient to convict him of conspiracy. It is true that his testimony and that of Mannley as to how he came into possession of the marked bills conflicted but they were discovered only after his illegal arrest and search.

The court below should have suppressed the use of the evidence, the

---

3. Testimony of Bowman G. Taylor (Cross Examination—P. 203, Record)

"Q. I want to get down to this search. Who searched Mr. Cochran? A. I did.

"Q. He was the first man you searched, was he not? A. No, I searched Mannley first.

"Q. You had already searched Mannley? A. Yes, sir.

"Q. Cochran was the next man? A. I believe he was.

"Q. You had a list of the bills you had given Rambo, did you not? A. Yes, sir.

"Q. You took that list and you counted out the money, didn't you? A. I took three 20-dollar bills and the list and showed it to Mr. Cochran and let him see it was marked money.
 * * * * *

"Q. Now, Mr. Cochran didn't say anything when you found the three 20-dollar bills? A. Yes, he said Mannley had owed him the money and paid it.

"Q. Mr. Cochran said Mannley owed him the money and paid him? A. Yes, sir.

"Q. What, if anything, did Mr. Mannley say? A. He said he paid the money to a used car dealer for payment of the car.

"Q. Did he correct that statement after that? A. I believe he said something about he didn't mean to tell me that, he didn't know the money was marked, or something to that effect."

marked money, and directed a verdict of acquittal. See Rent v. United States of America, 5 Cir., 209 F.2d 893, and authorities cited therein.

The judgment appealed from is affirmed as to Collins, but reversed and the bill dismissed as to Cochran. The appeal of Ratcliff is dismissed for failure to prosecute the same. Rule 22 of this Court.

RUSSELL, Circuit Judge (dissenting).

I respectfully dissent from the reversal of the judgment as to appellant Cochran. While it is of course true, generally, that a hotel man or tourist court operator is not to be charged with law violations of the occupants of his rooms, the present is not the usual case. In the first place, it is clear that co-defendant, Mannley, who was under investigation by the narcotic agents, was a somewhat permanent tenant of the tourist court which Cochran managed. It is likewise clear that there was much intercommunication and travel and acquaintanceship between each of the defendants. This was apparent to the agents through the several days of the investigation. Furthermore, at the time the defendant Collins referred Rambo to Mannley, as a source from whom narcotics could be purchased, Cochran was present and, upon being asked by Collins if Mannley had any narcotics, Cochran replied, "I suppose he has, he always does have." This, be it remembered, was the regular tenant of one of his tourist cabins. When subsequently the agents made the purchase from Mannley and determined the time was ripe to spring the trap and a search disclosed the narcotics in Mannley's cabin, it seems to me there was probable cause for the belief that Cochran, the operator of the tourist court, was a party to the conspiracy, or at least concerned in the illegal sale, and thus was sufficient to authorize his arrest. The incidental search of his person was therefore not illegal and the discovery of the marked money in Cochran's possession, together with the other facts and circumstances in the case, presented a question of guilt for determination by the jury. I think, therefore, the trial court correctly refused to suppress the evidence and to direct a verdict of acquittal of Cochran.