Vito **GENOVESE**, Petitioner,

v.

**UNITED STATES** of America, Respondent.

Nos. 65 Civil 2764, Cr. 156–157.

United States District Court
S. D. New York.

July 22, 1966.

---

Edward Bennett Williams, Robert L. Weinberg, Washington, D. C., Wilfred L. Davis, New York City, for petitioner.

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, New York City, for United States, Robert G. Morvillo, Michael W. Mitchell, John S. Martin, Jr., Asst. U. S. Attys., of counsel.

## OPINION

WEINFELD, District Judge.

Petitioner, Vito Genovese, more than six years after the affirmance of his conviction together with thirteen codefendants [1] for conspiracy to violate the narcotics laws,[2] and four years after denial of a motion for a new trial,[3] now moves pursuant to 28 U.S.C., section 2255 to vacate the judgment of conviction

and the fifteen year sentence and $20,000 fine imposed thereunder. The asserted ground of the motion is that there was no evidence of an essential element of the offense, to wit, either knowledge of illegal importation of narcotics or actual or constructive possession thereof, from which such knowledge could be inferred under the applicable provision of section 174 of Title 21.

The petitioner, apparently recognizing that section 2255 is not to be availed of for a renewed appeal or further review of contentions previously made,[4] seeks to cloak his application with constitutional dimensions, contending that the lack of evidentiary support for the above mentioned element constituted a denial of due process and rendered the judgment void under Thompson v. City of Louisville [5] and Garner v. State of Louisiana.[6]

With his claim thus resting upon the alleged lack of any evidence of a requisite essential element, and assuming arguendo that lack of proof of a single element of a crime constitutes a constitutional infirmity,[7] the court perforce has reviewed and studied the voluminous appeal appendix and the full record of the proceedings. Against the background of all the evidence upon which the conspiracy conviction of the petitioner and

---

1. United States v. Aviles, 274 F.2d 179 (2d Cir.), cert. denied, 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960).

2. 21 U.S.C. §§ 173, 174.

3. United States v. Aviles, 200 F.Supp. 711 (S.D.N.Y.1961), and United States v. Aviles, 197 F.Supp. 536 (S.D.N.Y.1961), aff'd, 315 F.2d 186 (2d Cir.), vacated and remanded sub nom. Evola v. United States, 375 U.S. 32, 84 S.Ct. 24, 11 L.Ed. 2d 106 (1963), aff'd, 337 F.2d 552 (2d Cir.1964), cert. denied, 380 U.S. 906, 85 S.Ct. 885, 13 L.Ed.2d 794 (1965).

4. See United States v. Sobell, 314 F.2d 314, 322–325 (2d Cir.), cert. denied, 374 U.S. 857, 83 S.Ct. 1906, 10 L.Ed.2d 1077 (1963); Kyle v. United States, 266 F.2d 670, 672 (2d Cir.), cert. denied, 361 U.S. 870, 80 S.Ct. 131, 4 L.Ed.2d 109 (1959). See also Sanders v. United States, 373 U.S. 1, 15–17, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

5. 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960).

6. 368 U.S. 157, 82 S.Ct 248, 7 L.Ed.2d 207 (1961).

7. See Smith v. State of Texas, 329 F.2d 498, 499 (5th Cir.1964); United States ex rel. DeMoss v. Commonwealth of Pennsylvania, 316 F.2d 841, 843 n. 4 (3d Cir.), cert. denied sub nom. DeMoss v. Rundle, 375 U.S. 859, 84 S.Ct. 123, 11 L.Ed.2d 85 (1963). But see Player v. Steiner, 292 F.2d 1, 2 (4th Cir.1961), cert. denied, 368 U.S. 959, 82 S.Ct. 404, 7 L.Ed.2d 390 (1962), where the court observed that "an absence of evidence proving one of the elements of a crime which is made up of several elements is not the same as a conviction on absolutely no evidence at all."

the codefendants was based, the court finds no substance to petitioner's contention that evidence was wanting to support knowledge of illegal importation. The attempt to bring the case within Thompson v. City of Louisville must fail. Parenthetically it should be observed that on his motion for a new trial petitioner urged his present contention as to lack of evidence upon the Court of Appeals following remand by the Supreme Court.[8]

The basic conspiracy was to import and smuggle narcotics into the United States—to buy, sell and distribute the drugs—and extended from 1955 to 1958. The petitioner's knowing participation in the conspiracy rested upon the testimony of Nelson Cantellops, a principal and active participant in various narcotics purchases, sales and distributions over a two-year period. Petitioner was identified as "the right man" to Cantellops by other named co-conspirators, and in 1956, when a co-conspirator was engaged in conversation with Genovese and Cantellops approached, Cantellops was told never to interfere when one was talking to "the right man." Also, during the period when Cantellops was engaged in extensive activities in furtherance of the conspiracy, Genovese sought assurances that Cantellops was "allright."[9]

Cantellops testified as to a meeting with Genovese on the West Side Highway in August or September 1956. It occurred when Cantellops was enroute in a car with four other co-conspirators to attend a prearranged meeting in the Bronx to discuss narcotics distribution and control of a section in that Borough. Genovese was in another car with another co-conspirator. Cantellops changed from his car to the one where Genovese was seated and was introduced to "the right man" by Ormento, a co-conspirator, as one who "is doing a good job for us. He is helping us * * *." Cantellops testified that the petitioner "didn't say too much, except we were going to a meeting where territorial control was to be discussed and these people were counting on me to help them out * * *." Both cars with their occupants proceeded to a meeting place in the Bronx, but Genovese did not immediately join the conference participants, who numbered six. The discussion by those present centered about sealing off the Longwood area of the Bronx; using it for the narcotics business; and getting rid of some of the narcotics pushers because there were too many in the area, with an estimate that it would take a month and a half to execute the plan. The witness summed up the meeting's purpose as controlling the distribution of narcotics by the use of policy banks and by sealing off the specified area to eliminate competing narcotics peddlers.

After a half hour the petitioner entered the conference room where all the co-conspirators who had discussed the takeover of the Bronx territory were still present. Cantellops testified that Genovese then inquired, " * * * what was the decision, what was the decision in the plan, what they had in mind [and] everybody spoke his part and the time and details, and * * * he wanted to know because he wanted to know when to send his men in." Since "everybody spoke his part," clearly the inference was permissible that narcotics, despite petitioner's contention to the contrary, was the subject matter of the discussion. Considering petitioner's earlier conversation with Cantellops in the car on the West Side Highway that the purpose of the scheduled meeting was to discuss territorial control, the intelligence conveyed to him, Genovese, in response to his request by those present at the conference as to what the plan was, and his desire to know "when to send his

---

8. Petitioner's brief on reconsideration following remand by the Supreme Court of the United States, pp. 19–21.

9. Cf. United States v. Agueci, 310 F.2d 817, 823–824, 99 A.L.R.2d 478 (2d Cir. 1962), cert. denied 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963); United States v. Beigel, 254 F.Supp. 923, S.D. N.Y.1966.

men in," it is clear that even though Genovese was not shown to have had actual physical possession, he did have constructive possession in that he not only had an intimate working relationship with other co-conspirators which enabled him to assure distribution of narcotics,[10] but also was a prime force in implementing the very plan the conspirators had agreed upon at the conference for distribution of the syndicate's narcotics in the Longwood area.

The Court of Appeals, in affirming the conviction of this petitioner and the others, after noting that abundant evidence established the conspiracy charge against those who were active in handling and distributing the drugs, commented with respect to the petitioner that:

" * * * the proof is also sufficient against those who were concerned with the planning and the strategy of the conspiracy and the expansion of its business such as Vito Genovese . . . .

"Although there is no proof that Vito Genovese ever himself handled narcotics or received any money, it is clear from what he said and from his presence at meetings of the conspirators and places where they met and congregated that he had a real interest and concern in the success of the conspiracy. We find upon all the evidence that there is ample proof of Genovese's participation in the conspiracy as one of its principal directing heads. That Genovese was called 'The Right Man' by those actively dealing with the distribution of the narcotics and that he ackowledged the name is not without significance in view of his interest and participation in furtherance of the conspiracy." [11]

■■ Possession, whether actual or constructive, may be established by circumstantial evidence and the reasonable inferences to be drawn from established facts.[12] As a "principal directing head" of the conspiracy and one who was looked to by those who actively dealt with the narcotics, there was more than ample evidence of constructive possession to permit a finding of knowledge by petitioner of the illegal importation of the narcotics.[13]

■■ Petitioner makes a further attack based on the trial judge's instructions upon the ground that they did not require the jury "to find such knowledge in order to return a verdict of guilty of conspiracy to violate 21 U.S.C. §§ 173, 174. It was required only to find the elements of a § 371 conspiracy." Apart from the fact that this belated challenge to the court's charge is not permissible under section 2255,[14] the claim itself and the attempt to bring it within the subsequently decided case of United States v. Massiah[15] is without support. In Massiah the trial judge failed to read the indictment to the jury. Here Judge Bicks preliminarily stated to the jury that the defendants were charged with conspiracy to violate sections 173–174 of Title 21—"in brief * * * with hav-

10. See United States v. Hernandez, 290 F. 2d 86, 90 (2d Cir.1961). See also United States v. Jones, 308 F.2d 26, 31 (2d Cir. 1962).

11. United States v. Aviles, 274 F.2d 179, 188 (2d Cir.), cert. denied, 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960).

12. United States v. Agueci, 310 F.2d 817, 828 (2d Cir.1962), cert. denied, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963).

13. Cf. United States v. Green, 327 F.2d 715 (7th Cir.), cert. denied, 377 U.S. 944, 84 S.Ct. 1350, 12 L.Ed.2d 306 (1964) ; United States v. Wright, 309 F.2d 735 (7th Cir.1962), cert. denied, 372 U.S. 929, 83

S.Ct. 873, 9 L.Ed.2d 733 (1963) ; United States v. Jones, 308 F.2d 26, 31 (2d Cir. 1962) ; United States v. Hernandez, 290 F.2d 86, 90 (2d Cir.1961) ; United States v. Williams, 239 F.2d 517 (2d Cir. 1956) ; Cochran v. United States, 212 F.2d 511 (5th Cir.1954).

14. See Hilliard v. United States, 345 F.2d 252, 254 (10th Cir.1965) ; Smith v. United States, 337 F.2d 450, 451 (7th Cir.1964) ; United States v. Sobell, 314 F.2d 314, 330 (2d Cir.), cert. denied, 374 U.S. 857, 83 S.Ct. 1906, 10 L.Ed.2d 1077 (1963).

15. 307 F.2d 62 (2d Cir.1962), rev'd on other grounds, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

ing illegally conspired to import and distribute the narcotic drugs from February, 1955 to July, 1958." He then read the charging paragraphs of the indictment which enumerated various conspiratorial purposes of the criminal enterprise, among them that:

"* * * defendants * * * would receive * * * buy, sell and facilitate the transportation, concealment and sale of a quantity of narcotic drugs * * * after the said narcotic drugs had been imported and brought into the United States, contrary to law, knowing that the said narcotic drugs had been imported and brought into the United States contrary to law in violation of Sections 173 and 174 of Title 21, United States Code.

"It was a part of said conspiracy that the said defendants and co-conspirators would unlawfully import, smuggle and clandestinely introduce large amounts of narcotic drugs into the United States from and through Cuba, Puerto Rico, Mexico, * * *"

And, after his general instructions on the law of conspiracy, the jury was instructed:

"You may find those defendants guilty who joined the conspiracy with knowledge of its purpose and acquit those who did not join."

In upholding substantially similar instructions to the jury, our Court of Appeals, in United States v. Bentvena,[16] observed: "It must thus have been clear to the jury from the outset that the defendants were charged with conspiring to import narcotics or to deal in them, knowing of their illegal importation.

It is significant that no exception was taken by petitioner's counsel (of whom his present counsel was one) to the court's charge as to the essential elements. And of even greater significance is that upon the direct appeal from the conviction petitioner's brief is completely silent with respect to his present contention. The adequacy of the instructions on the essential elements is perhaps best indicated by the statement made to Judge Bicks by petitioner's counsel in arguing in support of a motion for a new trial or a directed verdict: "Your Honor so capably instructed the jury as to all the necessary and essential elements constituting the crime of conspiracy that . . . for me to advert to them now would be just ridiculous * * *."

Petitioner further contends that the judgment of conviction is void because the court, in its instructions to the jury, stated that the conspiracy charge was grounded upon section 371 of Title 18, the general conspiracy statute. The court's misstatement in this respect, in view of the reading of the indictment and the substance of the entire instructions as to the nature of the conspiracy charge, is of no significance.[17]

The alternative relief to correct the sentence so as to vacate the original one, to impose a five year maximum under the general conspiracy count, and to order petitioner's immediate release since he has already served five years, is denied, as is the further alternative motion for a sentence of not less than two nor more than ten years under 26 U.S.C. section 7237(a), for which relief no basis whatsoever is set forth in the moving affidavit.

The application is denied in all respects.

---

16. 319 F.2d 916, 938 (2d Cir.), cert. denied, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963). See also United States v. Agueci, 310 F.2d 817, 825 (2d Cir.1962), cert. denied, 372 U.S. 959, 83 S.Ct. 1013 (1963).

17. See United States v. Massiah, 307 F.2d 62, 70 (2d Cir.1962), rev'd on other grounds, 377 U.S. 201, 84 S.Ct. 1199 (1964); United States v. Galgano, 281 F.2d 908, 911 (2d Cir.1960), cert. denied sub nom. Carminati v. United States, 366 U.S. 960, 81 S.Ct. 1916, 6 L.Ed.2d 1253 (1961).