Daniel B. DURAN, Antonio Gonzalez Guttierez, and Jose Luis Martinez Cruz, Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 22347, 22347–A, 22347–B.

United States Court of Appeals
Ninth Circuit.

June 12, 1969.

Certiorari Denied Nov. 10, 1969.

See 90 S.Ct. 239.

Barry Tarlow (argued), Beverly Hills, Cal., for appellants.

Robert L. Brosio (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Anthony Michael Glassman, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and CARTER, Circuit Judges.

598

BARNES, Circuit Judge:

The three appellants herein were severally convicted by a jury on all counts charged against them. Duran was sentenced to 15 years, concurrently, on each of Counts I, II and V. Cruz and Guttierez were each sentenced to 5 years, concurrently, on Counts I and V.

Count I charged a conspiracy to illegally import, receive or conceal narcotics. (21 U.S.C. § 174.) Counts II and V were substantive counts charging Duran with receiving and concealing heroin on May 5, 1966 and May 11, 1966. Cruz and Guttierez were each convicted of the conspiracy count (Count I), and of receiving and concealing heroin on May 11, 1966 (Count V).

The substance of the conspiracy alleged was that the defendant Daniel B. Duran would arrange for Mexican nationals to smuggle heroin into the United States from Mexico. The shipments of heroin would be brought into the United States approximately once every two weeks. The Mexican nationals would register at motels in Los Angeles County. The defendant Daniel B. Duran would then arrange for the defendant Robert Vasquez and unindicted coconspirator Alfred Joseph Ales to accept delivery of the heroin, and pay for it with money supplied by Duran. The defendant Vasquez and unindicted coconspirator Ales would then deliver the heroin to the defendant Duran.

Several dates and several amounts of heroin are involved herein. One amount was allegedly delivered to Ales by Cruz and Guttierez on May 5, 1966, and a part of that was found by a janitor of the Alexandria Motel on May 6, 1966 [1] in unindicted coconspirator Ales' room under his bed during his absence (Ex. 1–B). Another amount was found in a package taken from codefendants Cruz' and Guttierez' motel room at the Gales Motel by the motel manager eleven

hours after the arrest on May 11, 1966 [2] of Cruz and Guttierez and their removal from said premises by the police. (Ex. 2–B.)

Appellants urge seven grounds as error:

1. The heroin seized at the Alexandria Motel on May 6, 1966 was obtained through an illegal search and seizure, and was inadmissible.

2. Also inadmissible by reason of the illegal search and seizure of the heroin on May 6, 1966 were:

(a) the testimony of Ales before the grand jury;

(b) the baseball schedule card taken from codefendant Vasquez (Ex. 4–C), with the Gales Motel's name and address written thereon;

(c) the piece of cardboard taken from codefendant Cruz on May 11, 1966 (Ex. 8), with the Gales Motel address written thereon;

(d) the heroin found in Cruz' and Guttierez' vacated room on May 12, 1966. (Ex. 2–B.)

3. The heroin found in Cruz' and Guttierez' room on May 12, 1966 was inadmissible because:

(a) the entry to Cruz' and Guttierez' room on May 12, 1966 was unlawful under California law;

(b) the arrest and search of Cruz and Guttierez was unlawful because there was no warrant and no probable cause for the arrest.

4. The evidence was insufficient as a matter of law to find possession of narcotics as to Count V on May 11 or May 12, 1966.

5. The conviction on Count I (the conspiracy) must be reversed because of:

(a) errors in instructions;

(b) insufficiency of the evidence.

1. There is confusion in the record as to exact dates. The transactions testified to occurred in the late hours of May 5th, or the early hours of May 6th, and each date is referred to, with respect to Exhibit 1–B.

2. See n. 1, May 11th and May 12th seem to be interchangeable.

6. Effective assistance of counsel was denied appellants because one counsel represented all defendants.

7. Remarks made by the trial judge denied appellants a fair trial.

8. The errors made by the trial court as to any one count affect all counts.

Counsel for appellants urges that if points 6, 7 or 8 have merit, then all counts must be reversed. We agree that if any such error existed, as is charged in points 6, 7 and 8, a reversal would be required. But a careful reading of the transcript convinces us no error in these three respects exists. By reason of such over-all reliance by appellants, it would seem proper to consider such alleged errors first.

## I.   Representation by Counsel

The trial judge on more than one occasion queried the retained trial counsel, David C. Marcus, Esq., if there was "the slightest hint of conflict" of interest between the several defendants. (R.T. 4, Vol. A.) Before the jury was selected, the trial judge again inquired if any conflict existed in Mr. Marcus then representing the three defendants going to trial (Duran, Cruz and Guttierez).[3] The trial judge was assured by Mr. Marcus there was no conflict. (R.T. 14.)

> "When counsel represents to the Court that there is no conflict of interest 'the trial court must be able, and be freely permitted, to rely upon counsel's representation that the possibility of such conflict does or does not exist.' Kaplan v. United States, 375 F.2d 895 (C.A. 9 1967). In view of the assurances of counsel and the appellant, the Court's determination that there was no conflict of interest was in accord with the law and the facts." Clark v. United States, 412 F.2d 491 (9th Cir., decided May 19, 1969).

We have read the entire 480 pages of testimony in the transcript, and find no obvious or patent conflict of interest as between these three defendants. Counsel on appeal suggests that *perhaps* the "best defense" would have been to have Duran blame Cruz and Guttierez; that "there was no specific evidence to connect Duran with his codefendants except the facts that both [codefendants] apparently knew Vasquez and that Duran had been seen at an address found on Guttierez' automobile registration." What is meant by the reference to "specific evidence" is uncertain. There was in the record positive testimony of Ales, which seems to be specific enough, and not circumstantial evidence. This evidence we are now asked to overlook.

It is next suggested that Guttierez could blame Cruz, Vasquez and Duran; that he could assert that Cruz alone had brought the heroin to their room; and Guttierez could charge Cruz, Vasquez and Duran with the narcotic conspiracy.

Finally, it is represented that the evidence against Cruz was weak (Brief, p. 74), and that the defense actually raised on behalf of all three defendants is "preposterous" (*i.e.*, that Ales could not be believed and that each defendant was innocent).

■ Appellants now criticize the defense "adopted" from hindsight. If any defense was to be "adopted," it might well have been that "the best defense" for the original *four* defendants "to adopt" was to keep them all under the shepherd's crook of one attorney. Their attorney, David C. Marcus, Esq., is a well known and busy criminal defense attorney in Los Angeles, with at least twenty-five years' experience. By no means could his defense of these defendants have been described as a farce, or a sham. That he used an unsuccessful defense does not prove that it was not the best, nor that it was inadequate. "[B]ecause one counsel suggests after the fact, that he thinks the case should or could have been defended in a different manner, does not make the trial 'a farce

---

3.   Vasquez did not appear at this trial, having disappeared—and was not available for trial. He had also been represented by Mr. Marcus.

and a mockery of justice'." United States v. Callison, 408 F.2d 1362 (9th Cir., 1969). Nor does it prove counsel could not properly represent all defendants, nor that the trial was a farce or a sham. We find no merit in appellants' sixth alleged error.

## II. Remarks of the Trial Judge

■ The very tenacity displayed by counsel for defendants below (which resulted in exasperating the trial judge) belies trial counsel's alleged incompetence and/or lack of diligence. While the trial judge was clearly short of patience at times with trial counsel, no error is charged in any of the rulings he made (save as to instructions, which we will hereinafter discuss). Further, he was critical at times of the prosecution as well as the defense. He repeatedly advised the jury not to be governed or influenced by his remarks.

Appellants urge us to remember what was said and done by this court when passing on the conduct of the same trial judge in an unrelated case. (Carroll v. United States, 326 F.2d 72 (9th Cir. 1963).) The writer of this opinion is thoroughly familiar with the facts and opinion in *Carroll,* having sat on the panel deciding it. Both cases have some things in common. *See id.* at 82–85, parts numbered 4, 5 and 6. We disagree with appellants' counsel's conclusion, however, that "The conduct of the trial court in this case went further than it did in *Carroll,* and it thereby passed the bounds determined permissible by this Circuit." It did neither. Appellants themselves agree that "while any one of these comments, taken alone, could be harmless" (Brief, p. 85), in the aggregate they constitute error. "No error" plus "no error" does not, in our opinion, create "error."

We are convinced there is no merit in appellants' claim that prejudice was shown by the trial judge or that appellants were unfairly tried.

## III. Cumulative Errors

■ Nor can we find merit in point 8. There is no error in joinder of charges of similar types of crimes or acts constituting part of a common plan or scheme. In fact, it is specifically authorized, if not suggested, by the Federal Rules of Court. Fed.R.Crim.P. 8(a).

■ As to double jeopardy, "successive federal prosecutions of the same person based on the same acts are prohibited by the Fifth Amendment. * * * It was held in Pereira v. United States, 347 U.S. 1, 9, 74 S.Ct. 358, 363, 98 L.Ed. 435, that '[A] defendant may be convicted of [two offenses] even though the charges arise from a single act or series of acts, so long as each requires the proof of a fact not essential to the other.'" In re Herndon, 394 U.S. 399 89 S.Ct. 1107, 22 L.Ed.2d 367 (1969). We find no merit in the claim of double jeopardy.

## IV. Alleged Illegal Search and Seizure

The principal error relied upon by appellants is that of the seizure of the heroin from unindicted coconspirator Ales on May 6, 1966, and from defendant Cruz' and defendant Guttierez' room on May 12, 1966; as well as the seizure of the baseball schedule card from codefendant Vasquez and the piece of cardboard taken from defendant Cruz were each unlawful; and that such evidence should have been suppressed.

The short answer to this is that no motion to suppress any evidence was made by any defendant prior to trial, when such a motion is required (subject to the court's discretion) to be made. Fed.R.Crim.P. 41(e). "The motion shall be made before trial of hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing." *Cf.* Jones v.

United States, 362 U.S. 257, 260–261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).[4]

When counsel for defendants urged at the conclusion of the Government's case that he had made a motion to suppress *evidence* because such evidence had been obtained illegally and without a search warrant, the court asked to what documents he referred. Mr. Marcus replied by reading the second paragraph of his motion (numbered (2) in note 4, "to suppress the *indictment*") which reads as follows: "2. The evidence *presented to the grand jury* in support of the indictment was illegally and unlawfully obtained, in violation of the constitutional rights of each of the named defendants." (Emphasis added.)

There was but one affidavit filed on behalf of this motion to "Suppress and Dismiss the *Indictment.*" It was made by defendant Duran, and recited matters of public record with respect to state prosecution, and ended with five additional pages (C.T. 27–35)—largely based on information and belief, relating *solely* to the alleged improper influences and inducements allegedly brought to bear on the witness Ales. (C.T. 35–40.)

Affiant further stated on information and belief that "the basis for the Indictment of the defendants in this matter is *solely* predicated upon the evidence so elicited from the said Ales, and that no other evidence before the Federal Grand Jury is sufficient in itself *to support said indictment.*" (Emphasis added. C.T. 39–40.)

Thus it seems clear no motion to suppress the *evidence*, now relied upon as unlawfully obtained, was ever made on behalf of these appealing defendants in

the trial court, as required by Fed.R. Crim.P. 41(e). On the second day of trial, the motion numbered (3) (n. 4 of this opinion) was made and granted. On the third day the motion numbered (4) (n. 4 of this opinion) was made and denied. No motion to suppress evidence was made at any time *during* the trial.

On July 12, 1966, after the trial, motions for acquittal and for a new trial were made. A general reference to an "unlawful search and seizure" was made (C.T. 72) in the motion for acquittal, without reference to the specific error now raised for the first time on this appeal. No mention was made whatsoever of this alleged error in the defendants' motion for new trial. (C.T. 75–76.)

Thus, appellants not only did not raise the issue (now sought to be raised on appeal) *prior* to the trial, as required by Rule 4(e); but they did not even raise the same alleged error at the trial. The only attack made on any evidence up to the conclusion of the trial was Mr. Marcus' statement, made on hearing the motion to dismiss the indictment, that the motion was predicated on the fact the unindicted coconspirator Alfred Ales had been taken before the grand jury in the absence of Ales' counsel and his constitutional rights had been violated. Further, the record discloses that Mr. Marcus had knowledge, prior to the trial, of the point he declined to raise prior to trial, or at it.

No objection was made based on an unlawful search and seizure when the Alexandria Motel heroin was offered in evidence. (R.T. 303.) It was stipulated both heroin exhibits (Exs. 1–B and 2–B) were properly authenticated and

4. The only motions filed by counsel for the three appellants were the following:

(1) On July 1, 1966, motion on behalf of three defendants to inspect grand jury minutes and transcript (C.T. 21–22.) This was denied.

(2) On July 1, 1966, a motion on behalf of the three defendants to suppress indictment (C.T. 25–26.) This was denied immediately prior to trial.

(3) On July 6, 1966, a motion on behalf of all defendants to have access

to transcript of testimony of Ales before the grand jury. (C.T. 43.) This was granted. (C.T. 43, and 50–55.)

(4) On July 7, 1966, a motion, presumably on behalf of all defendants for a mistrial, by reason of the court's remarks. This was denied. (R.T. 277–278.)

(5) On July 7, 1966, defendants' motion for acquittal at conclusion of the Government's case. This was denied. (C.T. 81.)

identified as to chain of custody. (R.T. 300.)

■ Appellants recognize they first have a problem in establishing their standing to raise the search and seizure issue as to the heroin taken from Ales' room. Had Ales been indicted with them he would have had standing to object, and they, as codefendants, would likewise have had standing. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Hair v. United States, 110 U.S.App.D.C. 153, 289 F. 2d 894 (1961). But the Government did not choose to indict Ales.

Jones v. United States, 362 U.S. 257, 264, 80 S.Ct. 725 (1960), is relied upon by the appellant Duran to establish that because he was charged with receiving, concealing *and* facilitating (emphasis his), the concealment and transportation of heroin in Counts II and V, this in effect charged Duran with *possession* of heroin on both May 5 and May 11, 1966. Assuming, arguendo, we adopt appellant Duran's position as to his standing to suppress evidence as to Counts II and V by reason of the charges therein of possession against him; Jones v. United States, *supra,* is still not controlling. It is limited by its factual situation to motions made in a timely manner prior to trial.

Possession of narcotics by Duran is not an essential element of Count I. No proof of actual dealings in narcotics is required to establish conspiracy to violate the narcotic laws. United States v. Nuccio, 373 F.2d 168, 174, n. 4 (2d Cir.), *cert. denied* 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 623, *rehearing denied,* 389 U.S. 889, 88 S.Ct. 16, 19 L.Ed.2d 199 (1967). The prosecution in a conspiracy case "need not establish that all defendants directly handled the drugs." Lacaze v. United States 391 F.2d 516, 519 (5th Cir. 1968); Genovese v. United States, 269 F.Supp. 616 (S.D.N.Y.), *aff'd,* 378 F.2d 748 (2d Cir. 1967). Lack of possession could not save appellant Duran's conviction on Count I. We find no merit in the court's failure to suppress evidence when it was never suggested it should so act.

**V. Insufficiency of the Evidence as to Count I**

Appellants urge that the conspiracy count conviction should be reversed because of insufficiency of the evidence, and error in instructions.

■ The alleged error as to instructions is based on the failure of the instruction given (Mathes and Devitts, § 25.08, enumerating four essential elements of the conspiracy charged) to refer to "specific knowledge of illegal importation." (R.T. 542.) Appellants, to establish this error, rely upon United States v. Massiah, 307 F.2d 62, 70–71 (2d Cir. 1962), *rev'd on other grounds,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

There were two major questions raised in United States v. Massiah—(1) the admissibility of testimony obtained by eavesdropping after indictment and (2) the sufficiency of the instructions to the jury concerning the necessity, under 21 U.S.C. §§ 173 and 174, that the conspirators have knowledge of illegal importation. The Supreme Court reversed on the first ground, and did not consider the second.

The Second Circuit's reversal of the trial judge on both counts was by a split court. Chief Judge Lumbard thought the instructions given were sufficient; Judges Hays and Waterman did not. The reasons given by Judge Hays were: (1) the trial judge's erroneous statement "that the conspiracy was charged under the general conspiracy statute, 18 U.S.C. § 371, rather than the conspiracy clauses of 21 U.S.C.A. § 174." 307 F.2d at 70 (2) "The trial judge failed *at any point* in his charge on the conspiracy count to instruct the jury that knowledge of illegal importation was a necessary element of the conspiracy." (Emphasis in original.)

\* \* \* \* \* \*

"Thus the court charged under the wrong statute (18 U.S.C. § 371) and in so doing omitted to charge, indeed re-

jected the idea, that the jury must find that the drugs were imported to the knowledge of each defendant in violation of the law." *Id.*

Neither of the two errors cited by Judge Hays took place in this case. Further, the sequence of reference to the "knowing importation" as a necessary element in this case occurred after the first reference to Counts I, II and V, and applied to each of those counts.[5]

Further, as the Government points out in its brief, the Second Circuit in United States v. Bentvena, 319 F.2d 916 (2d Cir. 1963), recognizes the factual distinction between the *Massiah* and *Bentvena* cases.

The "isolated transaction rule" cannot be utilized by one in the midst of the group—with direct knowledge and supervision of the importation. Nor is it

> "an arbitrary rule which is to be applied rigidly and without reason. It has been utilized to exonerate a defendant only when there is no independent evidence tending to prove that the defendant had some knowledge of the broader conspiracy and when the single transaction is not in itself one from which such knowledge might be inferred." United States v. Agueci, 310 F.2d 817, 836 (2d Cir. 1962).

United States v. Bentvena, *supra*, 319 F.2d at 927.

Here the testimony of Ales (R.T. 88–149) constituted "independent evidence" of knowledge on the part of defendant Duran that the heroin involved in the conspiracy had been illegally imported.

> "As a 'principal directing head' of the conspiracy and one who was looked to by those who actively dealt with the narcotics, there was more than ample evidence of constructive possession to permit a finding of knowledge * * * of the illegal importation of the narcotics." Genovese v. United States, *supra*, 269 F.Supp. at 619, and cases cited in n. 13.

We conclude the jury was sufficiently advised, and understood, that the element of knowledge of illegal importation was an element of the crime, and that a finding of the presence of this element was prerequisite to the return of a guilty verdict on Count I.

The defendants offered no instructions on this issue; none were refused; and no defendant made any objection to the instructions when they were given. We hold the instructions given cannot constitute reversible error in the circumstances here present.

■ By reason of the existence of the independent evidence hereinabove referred to, there was sufficient convincing evidence which, if believed, estab-

---

5. The court here instructed:
> "The only counts you are to consider here are Counts I, II and V. * * * Now under the law that is applicable here, which covers this situation, it provides as follows:
> 'Whoever fraudulently or knowingly receives, conceals, buys, sells or in any manner facilitates the transportation, concealment or sale of any such narcotic drug after being imported and brought in knowing the same to have been imported or brought into the United States contrary to law * * * or whoever conspires to do any of the foregoing acts shall be guilty of an offense against the laws of the United States. * * *'"
> This instruction as to the conspiracy was followed four lines later by the § 25.08 instruction, without a second specific reference to the "knowledge" of a defend-

ant that the narcotic drug was imported. We put to one side the rather logical conclusion that one might find it difficult to conspire "to import and bring into the United States heroin, contrary to law," or "to smuggle and clandestinely introduce heroin into the United States from Mexico," or "to conceal" heroin in the United States after it had been brought in, "knowing it to have been brought in contrary to law [the charges here]", without considering at the same time whether the heroin was brought into this country contrary to law.

The facts of this case more strongly support the conclusion made by Judge Lumbard in United States v. Massiah, 307 F.2d 62 (2d Cir. 1962), than they support Judge Hays' and Judge Waterman's interpretation.

lished defendant Duran's guilt. We reject the position that it was insufficient.

## VI. Facts as to Illegality of the May 6, 1966 Search

We finally reach appellants' complaint that the May 5th (or 6th), 1966 search of the defendant Ales' motel room was illegal.

After asserting that Duran has *standing* to object to the search of Ales' room, Duran asserts that Ales was "subjected to an illegal search and seizure." The only reference to its illegality is in appellants' summary of argument, wherein it is referred to as a "warrantless search and seizure, by California police" (Brief pp. 7, 8) and the statement: "The search itself was illegal because it was conducted without a warrant while none of the exceptions to the warrant requirement were shown to be applicable." (Opening Brief, p. 9.)

Thus, without any consideration of the record here before us, or any discussion of the facts surrounding the May 6th Alexandria Motel search and seizure of the heroin obtained by Ales with the $7,500 supplied him by Duran, we are asked to hold it was an illegal search, tainting all other evidence obtained in other searches as well as the evidence obtained on May 6th.

The Government's position is (a) that any objection to the alleged illegal search and seizure was waived by the defendant's failure to move prior to the trial, or at the trial, to suppress; or to raise any objection at the trial (R.T. 235, et seq.; 237, lines 13–20; 256–269), and (b) that the search and seizure were valid. We agree with each position.

The only direct testimony in the record before us as to Exhibit 1–B (the heroin found in Ales' room) was the testimony of Ales alone (R.T. 85–149). *See also* R.T. 300, lines 19–20; 301, lines 12–17; 302, lines 14–22; 303, lines 2–25. Officer Sanchez, the officer who "took charge" of Exhibit 1–B was never asked how he came to have Exhibit 1–B in his possession (R.T. 205–292).

Exhibit C (the baseball schedule) was taken from Vasquez after his arrest. There was nothing in the testimony of officer Sanchez to indicate an invalid arrest. Exhibit C was obtained in a legal search incident to a lawful arrest.

However, in cross-examination of Officer Sanchez, the defense brought out, as a conclusion, that there was heroin found in Ales' room at the Alexandria Motel on May 6, 1966, which was stated to have been Ales'. (R.T. 250, et seq.)

There exists in the record before us a complete lack of any evidence as to the circumstances surrounding the finding of the heroin on May 6th, 1966 at the Alexandria Motel after it had been placed under the bed by Ales. There is also a complete lack of any evidence from which it could be ascertained if there existed any illegality in the entry to, or search of, the room, or in the arrest of Ales.

Appellants in their opening brief spend eleven pages on standing to object, and not one word on the facts allegedly making the May 6th, 1966 search illegal, other than the stated conclusion that it was "an illegal search and seizure." Appellants cannot establish any illegality of the search, for facts to support such a charge were never developed in the record of this case.[6]

---

6. An explanation is required to make this statement understandable. This lack of evidence is modestly referred to in the Government's brief as follows:
   " * * * the facts and circumstances surrounding the search of Alfred Ales' room at the Alexandria Motel on May 6, 1966 were never fully developed in the court below. The facts relied upon by appellants and the Government before this court are taken from the affidavits of Los Angeles Police Officers filed in the related prosecution of codefendant Robert Vasquez. (United States v. Vasquez, No. 36277 CF)."
   When this panel of this court was engaged in examination of the briefs and clerk's transcript prior to the date set for hearing (December 2, 1968), it came to light that pages 187 to 265 inclusive of the

■ It is Hornbook law that neither party can rely on evidence outside the record of the case on appeal (here, the record made in the prosecution of Duran, Guttierez and Cruz). We are limited on this appeal to the record made in the court below. 4A C.J.S. Appeal and Error § 1143 at pp. 1204–1205 (1957). United States v. Hedberg, 411 F.2d 607 (9th Cir. 1969); Morgan v. United States, 380 F.2d 686, 700 (9th Cir. 1967), cert. denied, 390 U.S. 962, 88 S.Ct. 1064, 19 L.Ed.2d 1160, rehearing denied, 390 U.S. 1008, 88 S.Ct. 1249, 20 L.Ed.2d 110 (1968); Bunn v. United States, 369 F.2d 809, 810 (5th Cir. 1966); Dodd v. United States, 321 F.2d 240, 242 (9th Cir. 1963); Rish v. United States, 272 F.2d 60, 61 (4th Cir. 1959). For that same reason we do not, should not, and cannot consider the Government's proof (as a defense to the charge of unlawful search) that the May 6th heroin was discovered through a private search made independently of any police or law enforcement agency, Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921), for the Government relies on proof outside the record.

■ We also need not consider the merits of the conviction of Duran on Counts II and V, since he received a similar concurrent sentence on Count I. Sinclair v. United States, 279 U.S. 263

49 S.Ct. 268, 73 L.Ed. 692 (1929); Banzer v. United States, 367 F.2d 865 (9th Cir. 1966), cert. denied, 385 U.S. 1009, 87 S.Ct. 715, 17 L.Ed.2d 546 (1967).

But even if the rule of Sinclair, supra, should be changed by the Supreme Court as a result of its consideration of Benton v. Maryland, cert. granted, 392 U.S. 925, 88 S.Ct. 2297, 20 L.Ed.2d 1384 (No. 1185, 1967 Term), reargument ordered, 393 U.S. 994, 89 S.Ct. 481, 21 L.Ed.2d 460 (1968) (renumbered No. 201, 1968 Term), the uncontradicted testimony of Ales, is sufficient to raise the factual determination of whether the "principal directing head" had actual or constructive possession of the narcotics which he had supplied the money to purchase. The determination of this issue would rest secondarily with the adequacy of properly admitted evidence against Cruz and Guttierez which we next consider. The conviction of Guttierez and Cruz on Count V, however, depends on the legality of the two searches on May 11th or 12th, 1966—the first at Vasquez' home where Exhibit 4–C, the baseball schedule card, led officers to the "Gáles Motel, 3029 San Gabriel (Boulevard), Room 24," where the second search took place.

## VII. Sufficiency of the Evidence as to Cruz and Guttierez

Putting aside for the moment the failure of the defendants' counsel to move

clerk's transcript related in their entirety to evidence produced at the second and subsequent trial of the defendant Robert Vasquez (missing at the first trial). The documents bearing such page numbers were filed in the district court *subsequent* to the trial of, and the filing of the notice of appeal by, the three appellants to this appeal.

It further developed that the same attorney now representing Duran, Guttierez and Cruz on this appeal defended Vasquez below, and filed a notice of appeal from his conviction; that the appeal of Vasquez was dismissed on October 24, 1967 by this court, without opposition, for failure to prosecute that appeal; that the original Opening Brief, filed on May 31, 1968, on behalf of the present appellants, referred almost exclusively, not to the record of their trial, but to documents filed

on behalf of Vasquez at his trial occurring some time after appellants' trial. With respect to the alleged unlawful search and seizure on May 6, 1966, there was no reference to any evidence properly, or in any manner, before this court on this appeal. The Assistant United States Attorney belatedly filed on November 12, 1968 in this appeal a motion to strike appellants' opening brief (because of its reliance on such evidence extrinsic to the record), and appellants' counsel opposed said motion. He conceded that he relied on evidence introduced at the Vasquez trial, but contended this court could not properly resolve two of the points urged on this appeal without having the Vasquez evidence before it. This court then issued its order striking appellants' said brief, and granted appellants leave to file a new brief, which was filed November 27, 1968.

to suppress any evidence, and the lack of evidence as to any unlawful search, we find appellants urging the theory that Ales simply cannot be believed. Ales' alleged willingness to talk to save himself, and the fact that two state narcotic officers had told him that if he testified against Duran in the federal courts "they would try to drop the charges" against Ales in the state courts (R.T. 126–131) invalidated (so the appellants say) all of Ales' testimony. Based on these facts appellants' brief states: "[I]t is clear that Ales' testimony was procured only by means of [the illegal search and seizure] which provided the state with a basis for putting Ales' freedom in jeopardy if he did not cooperate." (Appellants' Brief, p. 30.)

This reasoning necessarily assumes that there is evidence in the record that the search of Ales' room on May 6th was illegal. And we have shown, *supra*, that there was no such evidence in the case. Thus the cited cases of Smith v. United States, 120 U.S.App.D.C. 160, 344 F.2d 545 (1965); Takahashi v. United States, 143 F.2d 118 (9th Cir. 1944); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 391, 40 S.Ct. 182, 64 L.Ed. 319 (1920); and Rogers v. United States, 330 F.2d 535, 540 (5th Cir. 1964), have no precedential value.

■ From appellants' faulty conclusion as to proof existing in the record of the illegal search of Ales' room and the illegal seizure of the heroin, they reason that Ales was forced or coerced to talk, and hence no untainted evidence remained in existence to establish probable cause to arrest Vasquez. We hold to the contrary. Here, Vasquez' arrest was lawful (he was committing a felony in the presence of the officers), and the product of the search incidental to that lawful arrest was the baseball schedule card that led the officers to the Gales Motel, and to Cruz and Guttierez. Absent the primary thesis that the heroin at Ales' motel room was illegally searched for and seized, each of the subsequent searches and seizures may not be characterized as illegal solely by reason of the Gales Mo-

tel search, for there was no taint to pass along.

We next consider appellants' alternate position that the conceded warrantless arrest and search of Cruz' and Guttierez' motel room was unlawful, standing by itself, as a result of a forceful entry by the police, without their first demanding admittance and explaining the purpose of their demand.

We agree with appellants that state law determines the validity of an arrest made without a warrant. United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

California Penal Code § 844, cited and relied upon by appellants, relates to breaking down a door in making arrests, not to warrantless arrests. California Penal Code § 836 states the manner in which a peace officer may make an arrest without a warrant. After ascertaining the fact that Sanchez and his companions were peace officers, within the definition of California Penal Code § 817 (and they were); that they were acting without a warrant (they had none); that the crime for which appellants Cruz and Guttierez were arrested was a felony (it was—California Health and Safety Code § 11500; California Penal Code § 17; and R.T. 225), we must determine if there was probable cause for such arrest without a warrant. If there was, only then do we consider whether there has been compliance with California Penal Code § 844.

■ We conclude that there was ample probable cause for the state officers to arrest without a warrant, under California Penal Code § 836(3) and (5). Sanchez knew, and presumably his fellow officers knew, of Ales' statement as to Duran's employment of Ales to receive the contraband heroin from the "mules" bringing it across the border from Mexico. The officers knew of the arrest of Vasquez, with the heroin on his person when first seen, of his attempt to flee and/or destroy the evidence. They knew of Exhibit 4–C which contained the legend: Gales Motel

(room 24, 3029 San Gabriel Ave., San Gabriel). They knew that they were outside room 24 of the Gales Motel. They knew that in the parking space assigned to room 24 of that motel was a 1959 blue Mercury sedan automobile with the California license number "JUF 174." They knew this Mercury sedan was registered to one Juan Gonzales of 3520 Warwick Street, in the City of Los Angeles. (R.T. 220.) One officer, Sanchez, knew and had seen Duran, the alleged coconspirator, at 3520 Warwick Street, Los Angeles, "on several occasions." Another of the officers, Stevenson, had talked to the manager of the motel, Mrs. Wise, before room 24 was approached. (R.T. 222.) Whether Mrs. Wise told the officer that Guttierez had visited the same motel, signing the register under a different name each of the last four times he had stayed there, we do not know, because neither Mrs. Wise nor officer Stevenson was asked. Whether he saw the false names on the registration slips, later produced at the trial, we do not know. We do know, however, that Guttierez admittedly had made three trips to this same motel in the prior four months from Mexicali, and that he registered under the false name of Antonio Gonzales, and that Mrs. Wise had admittedly registered Mr. Guttierez each time. We also know that Mrs. Wise shortly after midnight on May 12th, 1966, gave a key to room 24 to Lieutenant Stevenson. (R.T. 188.)

Appellants' brief states the police officers "broke into the motel room of appellants Cruz and Guttierez" (Op. Brief, p. 34) and "burst into the locked room" (Op. Brief, p. 35). Guttierez stated the officers "pushed" the door open; Cruz stated they "pushed it in hard."

But it does not matter whether the officers entered with a key or forced their way in, provided they followed *substantially* the procedure set forth in California Penal Code § 844. We say "substantially" because a strict compliance with the provisions of this section is not required in a variety of situations. Peo-

ple v. Gallup, 253 Cal.App.2d 922, 61 Cal.Rptr. 709 (1967).

The officers say they knocked at the door of room 24 and got no response. The defendants Cruz and Guttierez say they were asleep and heard nothing until the officers entered. Under such circumstances, we have held the arrest by state officers, based on probable cause, as here existed, was lawful. Williams v. United States, 273 F.2d 781, 792 (9th Cir. 1959); People v. Maddox, 46 Cal.2d 301, 294 P.2d 6, *cert. denied,* 352 U.S. 858, 77 S.Ct. 81, 1 L.Ed.2d 65 (1956).

On facts far stronger in favor of appellants, the *Maddox* case is quoted in *Williams* as follows:

"'We conclude therefore that when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains.'" 273 F.2d at 793.

*See also* People v. Morales, 259 Cal. App.2d 290, 66 Cal.Rptr. 234 (1968); People v. Rosales, 68 Cal.2d 299, 66 Cal. Rptr. 1, 437 P.2d 489; People v. Wolfe, 257 Cal.App.2d 420, 64 Cal.Rptr. 855 (1967); People v. Hamilton, 257 Cal. App.2d 296, 64 Cal.Rptr. 578 (1967); People v. Gallup, *supra*; People v. Fritz, 253 Cal.App.2d 7, 61 Cal.Rptr. 247 (1967). *Cf. also* other cases—California Penal Code § 844, n. 1, at 708–709 (West Supp.1968).

We recognize that there is no "blanket exception" to the specified requirements of Penal Code § 844 in *all* narcotic cases, nor in *all* other cases involving easily disposable evidence. We recognize that a later California case has stated there is no such blanket rule, and that the burden is on the officers to make a specific showing of the necessity of an unannounced forcible entry. If we assume such an entry was made here, we

hold the officers were justified in their conduct, particularly in view of their experience on the same day shortly before this incident with Vasquez, one of the alleged conspirators. There being no reliance here by the arresting officers on any "blanket exception," Meyer v. United States, 386 F.2d 715 (9th Cir. 1967) is not applicable.

■ The only evidence obtained in the police search of room 24 of the Gales Motel was Exhibit 8, the piece of cardboard with Vasquez' telephone number written on it. Having been obtained by means of a legal though warrantless search by California police officers under California law, it was admissible against defendants Cruz and Guttierez generally, and against Duran as to Count I, even if there had been an objection raised on that ground, which there was not.

The heroin was discovered by Mrs. Wise in room 24, eleven hours after the defendants Cruz and Guttierez had left the motel room, and after their occupancy of the room had been terminated.

Mrs. Wise entered the room for her own purposes; to clean it and prepare it for the next occupant. She was not asked by the police officers to inspect or search the room, and there was no police participation of any kind in the search or the discovery. Knowing the police had once searched the premises, Mrs. Wise of her own volition, handed the results of her private examination of the room over to the police.

■ This was a private search. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). It might well be considered the heroin had been abandoned. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960).

On the whole, the record reflects that all defendants were fairly tried and that the evidence of their guilt was substantial. We perceive no demonstrable error and must therefore affirm.