977 F.2d 592
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raoul ESPINOZA-BARRAGAN, Defendant-Appellant.
 No. 91-50859.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 16, 1992.*
Decided Oct. 7, 1992.
 
 Before WIGGINS, KOZINSKI and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Raoul Espinoza-Barragan appeals his conviction on one count of conspiring to manufacture methamphetamine in violation of 21 U.S.C. § 846, and on two counts of knowingly using and carrying a firearm during the commission of a narcotics offense in violation of 18 U.S.C. § 924(c). We affirm.
 
 
 3
 I. Facts.
 
 
 4
 Espinoza-Barragan met Douglas Leal in late 1989. Leal told Espinoza-Barragan that he would sell some of the methamphetamine that Espinoza-Barragan had made. Espinoza-Barragan told Leal that he didn't have any product because he didn't have any ephedrine, and to let him know if he heard of any ephedrine being available. Leal said that he would.
 
 
 5
 Gary Bobel and Gary Walker were both narcotics traffickers in the southern California area. In August of 1990, Bobel told Walker that he knew someone in Reno who was trying to unload some ephedrine. In October of 1990, a mutual acquaintance put Leal in contact with Walker, who was trying to arrange the sale of the Reno ephedrine. There were five 55-gallon drums of the product. Walker said the ephedrine was in Reno, and that Leal would have to take the money there to purchase it. Leal then contacted Espinoza-Barragan and asked him if he was interested in buying the ephedrine. Espinoza-Barragan said that he didn't want to go to Reno, but that he would be interested if the ephedrine was brought to San Diego. In early November, Walker told Leal that the ephedrine would be brought to San Diego if the buyers could have the money ready. Leal then contacted Espinoza-Barragan, who told Leal to let him know when the ephedrine arrived. Joel Fabela-Alanis, another local narcotics trafficker, was present during one of Leal's conversations with Walker, and expressed an interest in the ephedrine.
 
 
 6
 Unbeknownst to Walker, Bobel had in the meantime begun cooperating with the DEA. The DEA set up a sting operation. On November 28, 1990, Walker, Leal and Fabela-Alanis met with Bobel and Ken Davis, a DEA agent. Davis posed as the ephedrine seller, and was introduced by Bobel. They decided not to do the deal that night, because Leal couldn't get all the money together.
 
 
 7
 Walker, Davis and Bobel again met to do the sale at 3:00 p.m. the next day, and Leal arrived with $47,000, which was for one or two of the drums. $35,000 of this was money Leal owed to Espinoza-Barragan for methamphetamine that Leal had previously bought from him. Espinoza-Barragan then arrived with the money for the other three drums. They all drove out to where the DEA had a motorhome with five drums of ephedrine inside. Leal and Espinoza-Barragan looked at the drums, and Espinoza-Barragan walked back to his car and asked Leal why he didn't have a truck to transport the ephedrine. Espinoza-Barragan then gave Leal a box containing $58,550 and a PVC pipe containing $37,000. Leal gave the money to Davis, and he and Espinoza-Barragan were then arrested. Leal decided to cooperate with the government, and set up a sting of Fabela-Alanis. Fabela-Alanis was arrested later that evening as he tried to arrange to pick up two drums of ephedrine.
 
 
 8
 When he was arrested, Espinoza-Barragan was carrying a loaded pistol, and had a loaded Uzi in the trunk of his car. He said he knew the ephedrine would be used to produce methamphetamine, but that he was only there to protect the money.
 
 
 9
 Espinoza-Barragan, Leal and others were indicted for conspiracy to manufacture methamphetamine, and Espinoza-Barragan was indicted on two counts of using and carrying a firearm in the commission of a narcotics offense. Espinoza-Barragan was convicted on all counts, and sentenced to a term of 295 months imprisonment. He timely appealed.
 
 
 10
 II. Admission of the Methamphetamine and Vitamin B Testimony.
 
 
 11
 Leal testified that Espinoza-Barragan fronted five pounds of methamphetamine to him on two different occasions in mid to late November of 1990. Subsequently, Larry Lansford, an Escondido police officer assigned to the narcotics unit, testified that he searched the trash at Espinoza-Barragan's residence in November of 1990 in response to neighborhood complaints. He found sixteen empty kilo bottles of vitamin B, which is used to cut pure methamphetamine.
 
 
 12
 Espinoza-Barragan argues that the district court erred in admitting Lansford's testimony, and Leal's testimony concerning the methamphetamine that Espinoza-Barragan fronted to him in November of 1990, because this is evidence of other bad acts that is inadmissible under Federal Rule of Evidence 404(b). Rule 404(b) states that evidence of "other crimes, wrongs or acts" is not admissible to prove character, but is admissible for other purposes, such as to prove knowledge or intent. We review the decision to admit evidence under Rule 404(b) for abuse of discretion. United States v. Mundi, 892 F.2d 817, 820 (9th Cir.1989), cert. denied, 111 S.Ct. 1072 (1991). We review the district court's balancing of probative value and prejudicial impact under Rule 403 for abuse of discretion. United States v. Feldman, 788 F.2d 544, 557 (9th Cir.1986), cert. denied, 479 U.S. 1067 (1987).
 
 
 13
 We need not decide if this testimony was other bad acts evidence under Rule 404(b), because even if it was, it was admissible. Other bad acts evidence is admissible under Rule 404(b) if (1) there is sufficient evidence to support a jury finding that the defendant committed the act, (2) the conduct is not too remote in time from the commission of the crime charged, (3) the conduct is sufficiently similar to the crime charged, and (4) the conduct is introduced to prove an element of the crime charged. United States v. Miller, 874 F.2d 1255, 1268 (9th Cir.1989).
 
 
 14
 First, the testimony of Leal and Lansford is sufficient to support a finding that Espinoza-Barragan fronted the methamphetamine to Leal and possessed the vitamin B containers. Second, the conduct occurred only a few weeks prior to the arrests. Third, the presence of the vitamin B containers and the methamphetamine sales show that Espinoza-Barragan knew how to manufacture methamphetamine, which is an element of the conspiracy charge. United States v. Litteral, 910 F.2d 547, 550 (9th Cir.1990). The conduct shown by the evidence was therefore sufficiently similar to the charged conduct, because it is admissible to show knowledge. See Miller, 874 F.2d at 1269. Fourth, Espinoza-Barragan's theory of defense was that he won the money gambling, and brought it to Leal on November 29, 1990 in order to loan it to him. All the elements of the conspiracy charge were at issue. The evidence was probative of whether Espinoza-Barragan knew how to manufacture methamphetamine. It was also probative of whether Espinoza-Barragan agreed to buy the ephedrine, because it shows that there was an agreement between Leal and Espinoza-Barragan to find ephedrine in return for methamphetamine. Finally, it was relevant to show the background and development of the conspiracy. United States v. McKoy, 771 F.2d 1207, 1214-15 (9th Cir.1985). Thus, it was properly admitted under Rule 404(b).
 
 
 15
 Espinoza-Barragan also argues that this evidence should have been excluded under Rule 403, because its probative value was substantially outweighed by its prejudicial impact. The evidence was probative of material facts, and the prejudice that Espinoza-Barragan suffered was not unfair, as required by Rule 403. The district court did not abuse its discretion in admitting this evidence.
 
 
 16
 III. Sufficiency of the Evidence on the Conspiracy Count.
 
 
 17
 Espinoza-Barragan argues that the evidence is insufficient to support his conviction on the conspiracy count. The evidence is sufficient to support a conviction if any rational trier of fact could have found all the elements of the crime beyond a reasonable doubt. United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990).
 
 
 18
 The elements of conspiracy to manufacture methamphetamine in violation of § 846 are (1) an agreement to accomplish the proscribed objective, (2) the commission of one or more overt acts in furtherance of that purpose, and (3) the mental state necessary to commit the underlying offense. United States v. Litteral, 910 F.2d 547, 550 (9th Cir.1990). Espinoza-Barragan says that the evidence is insufficient to show that he was involved in a conspiracy because there was no evidence that he saw or touched the ephedrine, or that it was actually present in the motorhome. However, Espinoza-Barragan may be convicted regardless of whether he directly handled the drugs. Duran v. United States, 413 F.2d 596, 602 (9th Cir.), cert. denied, 396 U.S. 917 (1969). Leal testified that Espinoza-Barragan agreed to buy at least four of the five drums of ephedrine so that he could make methamphetamine. Leal and Davis testified that Espinoza-Barragan drove out to buy the ephedrine, and handed approximately $100,000 to Leal as payment for the product, which constitute overt acts. Finally, Leal testified that Espinoza-Barragan wanted the ephedrine so that he could make methamphetamine. There was evidence of all the elements of the conspiracy conviction.
 
 
 19
 IV. Variance Due to Multiple Conspiracies.
 
 
 20
 Espinoza-Barragan argues that the district court erred by admitting Leal's testimony that Espinoza-Barragan fronted him methamphetamine on two different occasions, and Lansford's testimony that sixteen empty containers of vitamin B were found in Espinoza-Barragan's trash. He contends that this created a variance, because it shows the existence of multiple conspiracies, and that the indictment should have been dismissed. Espinoza-Barragan also argues that the Espinoza-Barragan and Fabela-Alanis sales were two different conspiracies. The conviction is valid if any rational trier of fact could have found a single conspiracy beyond a reasonable doubt. United States v. Arbelaez, 719 F.2d 1453, 1457 (9th Cir.1983), cert. denied sub nom. Ponce de Leon v. United States, 467 U.S. 1255 (1984). We review the district court's denial of a motion for mistrial for abuse of discretion. United States v. Marsh, 894 F.2d 1035, 1040 (9th Cir.1989), cert. denied, 493 U.S. 1083 (1990).
 
 
 21
 This is a wheel-type conspiracy, with Leal and Walker at the hub and Espinoza-Barragan and Fabela-Alanis on the spokes. When the conspirators are arranged in a wheel formation, the arrangement constitutes a single conspiracy if each defendant knew or had reason to know of the scope of the conspiracy and had reason to believe that his own benefits were dependent upon the success of the entire venture. United States v. Kenny, 645 F.2d 1323, 1335 (9th Cir.1981), cert. denied, 452 U.S. 970 (1981). The evidence indicates that Fabela-Alanis knew of Espinoza-Barragan's interest in the ephedrine, and it would be reasonable to infer that Leal told Espinoza-Barragan that others were interested in the ephedrine that he was trying to broker. Also, it would be reasonable to infer that Espinoza-Barragan and Fabela-Alanis were each aware that their own success depended on the success of the entire venture. Espinoza-Barragan was going to get at least four of the drums of ephedrine, and there is evidence that suggests that Fabela-Alanis was going to buy the fifth. Therefore, unless the ephedrine was delivered, neither of them would be able to make any money. The evidence is sufficient to support a finding that Fabela-Alanis and Espinoza-Barragan were involved in a single conspiracy.
 
 
 22
 The evidence that Espinoza-Barragan fronted methamphetamine to Leal, and that Leal's trash contained empty vitamin B containers, didn't create a variance. In determining whether the evidence supports the existence of a single conspiracy, the "basic test is whether there was one overall agreement to perform various functions to achieve the objectives of the conspiracy." United States v. Arbelaez, 719 F.2d 1453, 1457 (9th Cir.1983), cert. denied sub nom. Ponce de Leon v. United States, 467 U.S. 1255 (1984). The court looks to (1) the nature of the scheme, (2) the identity of the participants, (3) the quality, frequency and duration of each conspirator's transactions, and (4) the commonality of times and goals. Id. at 1458. The evidence need not exclude the possibility of multiple conspiracies; rather, it is sufficient if the evidence supports a finding that a single conspiracy exists. Id.
 
 
 23
 There was evidence to show that this was all part of one conspiracy. First, the evidence indicates that the scheme was an effort to manufacture methamphetamine. Espinoza-Barragan wanted the ephedrine for this purpose, and Fabela-Alanis wanted it so he could sell it to those who did. Second, the evidence indicates that Leal conspired with Walker, Bobel, Espinoza-Barragan and Fabela-Alanis to procure ephedrine for this purpose. Third, each defendant was involved in the conspiracy either as a principal or an agent, and each dealt with large amounts of ephedrine. Fourth, the defendants all played their parts in the conspiracy over a relatively brief two-day period. There is sufficient evidence to support the jury's finding that there was only one conspiracy.
 
 
 24
 Espinoza-Barragan's motion for a mistrial is similarly unavailing, because there was no error.
 
 
 25
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3